Phillips v. Evans et al.

---

PRESTON PHILLIPS, Respondent, *v.* WILLIS G. EVANS AND ISHMAEL VAN HORNE, Appellants.

1. *Practice—Answer.*—A motion to strike out matter set up in the answer, for the reason that it presents no legal defence to the cause of action, is proper practice.
2. *Slavery—Warranty—Contract.*—A note was given in consideration of the sale of a slave, the vendor, by bill of sale, warranting that the slave was a slave for life. Subsequent to the sale, slavery was abolished in this State by the ordinance of the Convention. *Held,* that the covenant did not warrant against the action of the State in abolishing the status of slavery, and that there was no failure in the consideration of the note.

*Appeal from Boone Circuit Court.*

In the year 1857, the appellee, Phillips, sold and delivered

to the appellant, Evans, a certain negro, named "Clara," (on the 26th of August of that year,) for the sum and price of $1050, and about the same time he sold and delivered to said Evans certain personalty for the further sum of $——, which sums were added together, and the appellants executed their joint promissory note therefor. This note ran several years, and was finally renewed by adding the accumulated interest to the original amount, for a new principal, and a new note for such new principal was executed by appellants. At the proper time, the appellants filed their answer in this cause, admitting the execution of the note sued on, but setting up by way of defence, that, simultaneously with the execution of the note, the plaintiff, Phillips, (who is appellee here,) made, executed and delivered to the appellant, Evans, (Van Horne being merely surety on the note,) his bill of sale, (or rather deed of "bargain and sale,") whereby he covenanted as follows: "which negro Clara I warrant sound and healthy, and a slave for life. I also warrant and defend the title of said negro Clara to said Evans forever," &c.; and assigning, as a breach thereof, that the said Clara was still alive though not a slave, by reason of the operation and effect of the "Ordinance of Emancipation," passed by the Constitutional Convention on or about the 11th day of January, 1865, which made her a free woman, and destroyed the appellant's title to her; and on a further breach, that, by reason of the same event, the consideration *pro tanto* of the note sued on had failed, and asking a recoupment for so much of the amount claimed on said note, &c.

The appellee moved to strike out all that part of the answer setting out the covenant and assigning breaches thereof. This motion the court below sustained, and the appellants declining to answer over, judgment went for the full amount of the debt, interest and costs. The appellants filed their motion in arrest, &c., which was overruled; whereupon they tendered and filed their bill of exceptions, &c., &c.

*S. Turner*, for appellants.

I. The Circuit Court erred in sustaining the motion to strike out. The practice act, it is believed, never contemplated that such motion would be resorted to in any case where a demurrer alone, under the ancient practice, would properly lie.

II. It is insisted that the bill of sale referred to in the answer (the material part of which is quoted above) must be construed with all the strictness of a solemn covenant—the words " bargain and sell," " warrant," and " warrant and defend the title forever," being among the terms employed by the covenantor. The effect of this term is, and doubtless was at the time intended by the parties, to put the property conveyed (if property the negro Clara could be called) upon the footing of real estate, thereby subjecting the covenantor to all the liabilities that would attach to the grantor in a deed embracing covenants running with land. In the instrument under consideration, there are no words of limitation or restriction, and hence the appellee Phillips must be deemed to have covenanted against the acts of the whole world. The Court of Appeals of Kentucky have adopted this rule for the construction of covenants in which no restrictive terms are employed—Combs v. Fisher, 3 Bibb, 51 ; Redding v. Hall, 1 Bibb, 536 ; Hoffman v. Sharp, 1 J. J. Marsh. 489 ; Thompson v. Jewell, 1 Marsh. 196. See also a thorough discussion of this question in Singleton v. Carroll et al., 6 J. J. Marsh. 529. The appellee Phillips, by the terms of the bill of sale, meant, either that he " would warrant the said Clara to be a slave for life," and that he " would warrant and defend the title to the said Evans forever," in the sense above contended for, or he meant nothing at all. The language used is broad, comprehensive and simple. It is a general covenant, and is and was intended to be prospective. Its meaning is obvious, and it must be construed according to the plain and obvious meaning of its terms—Parry v. Burch, 3 Mo. 447. Nothing will discharge

a covenant but a performance of it, or some act of the obligee preventing performance, or the obligee be guilty of laches, or execute a release under seal ; otherwise, the covenant is not discharged, and if not discharged, it is broken ; and if broken, the obligor must answer in damages—Thompson v. Cox, 6 Mo. 506 ; 1 Mo. 707. He who in general terms covenants, &c., shall be held to keep his covenant.

It was insisted in the court below that Phillips did not mean or intend to warrant a future event—especially an event of the nature assigned as a breach ; that he merely warranted the woman Clara to be then a slave for life ; that when he warranted the title forever, he did not mean forever ; that warranties of personal property contemplate the past and the present, and not the future—Eden v. Parkinson, 3 Doug. 735.

It is objected, however, that the Emancipation Ordinance of January 11, 1865, was not the act of the appellee, and that, therefore, he ought not to be a loser thereby. Suppose at that date he had held the slave, would not he then have been the loser ? If he sold her (as in this case) and warranted her to be a slave for (her) life, the money being still unpaid at the date of the ordinance, why should he not still be the loser—looking to the appellant for a fair compensation for the length of service she did perform, and no more ? This argument of counsel, if it proves anything, proves too much ; for it is assuming that one cannot covenant against persons other than himself, which, as a legal proposition, is absurd. But on the day last named, by competent and rightful authority—by an authority which held a title paramount—the title which appellee Phillips warranted to stand " forever " was declared null and void, whereby the appellants were, so to speak, evicted. This sovereign act of the State of Missouri was either tortious or rightful. If the former, it is conceded that the answer in this case presents no legal ground of defence, since, in that case, there is no breach in the warranty. If the latter, we insist that the answer sets out a good, substantial and valid defence. Either

the Convention had the legal power to pass this ordinance, or it had not. If it had such power, then the ordinance is valid and rightful. If it had·not such power, then the ordinance is itself a nullity.

*Sheeley & Boulware*, for respondent.

An answer that does not create or make an issue, or that presents a defence that is no legal bar to the action, can only be reached by motion—R. C. p. 1232, § 12, & p. 1236, §§ 30, 31. A demurrer will not lie in such a case. The causes for a demurrer are expressly given in the statute, and this is not one of them—Bond v. Worley, 26 Mo. 253.

In the investigation and argument of this cause, we are necessarily left in some respects in the dark. In the history of our country, no parallel case can be found. In all the States where slavery had existed and was abolished before the late rebellion, the abolition was by a gradual system, and the question could not be raised. ˙The government of England made a compensated emancipation when the system was abolished in the West India Islands. We are therefore compelled to argue this cause by analogy. For the purpose of the argument in this cause, the power of the people to meet in convention and pass an ordinance of emancipation is admitted, and the power was known to exist at the time of the purchase of the negro, both by the seller and the purchaser. It has been expressly decided by this court, in Sloan v. Gibson, 4 Mo. 32, that a warranty of soundness covers a disease existing at the time, and not future diseases. This principle is fully sustained in the case of Price v. Barr, Litt. S. C. 217. A man, in·the sale of a negro, warrants him to be sound in body and mind. Such a warranty has never been held to cover any disease that the negro may have had years before, but of which he had recovered at the date of sale, nor has it ever been held to cover any disease that might be contracted after the date of the sale and warranty. The cases before referred to settle the principle that the warranty only covers diseases existing at the date of the warranty. Thus,

a negro may be sold to-day and warranted sound ; to-morrow he contracts a disease of which he dies ; the purchaser cannot recover on the warranty. If, then, the law is so well and thoroughly settled upon that subject, it cannot be seen how a distinction can be drawn between a case of warranty of soundness and the case at bar.

If, then, this is likened to a covenant real, the legal eviction is wanting. There has been no judicial decision that any one else had a paramount title to the slave in controversy. The only effect of the ordinance is to make void the title which appellant held in the negro by virtue of his purchase of Phillips. It did not create or set up a paramount title. No one ever supposed that a covenant in a deed run against any defect that might arise after its date. A covenant in a deed has never been held to operate in the future ; indeed it was long doubted whether a man could covenant against the future at all. Covenants real have always been held to operate against any defect in the title that existed at the date of the deed. If the purchaser sees proper to let his land be sold for taxes arising after the date of the deed, he cannot sue on the covenant ; in fact there has been no breach.

In the case of Davis v. Sandford, Litt. S. C. 206, the negro in controversy had been in the State of Ohio, and there by the courts adjudged free—a fact well known to the purchaser. The bill of sale stated the negro to be "a born slave," and contained a warranty against all persons who "shall claim her as such." The court say that the seller was not responsible on the warranty, for the negro was a born slave, and "no one has set up a claim to her, as such, in opposition to the claim derived from the appellee." This, though not precisely in point, is strongly analogous. The purchaser knew of the Ohio judgment, took the usual warranty as to title, took no express warranty against the Ohio judgment, and no one has set up a claim to the negro under a paramount title. In the case at bar, the appellants knew the power of the people to pass an emancipation ordinance,

took a warranty of the usual character, containing no express warranty against the future action of the people, and no one has set up title claiming the negro. The negro was freed by the Ohio judgment, thus making void the title held or claimed to her. The seller was not responsible on the warranty, there being no express warranty against that judgment. In this case, the negro has been freed by the Ordinance of Emancipation. No one is setting up a claim to her. If the seller in the case just cited was not held responsible, how can the respondent in the case at bar be held responsible on his warranty, there being no warranty against the action of the people? The respondent in the case at bar warranted the negro to be a slave for life: that is, at the date of the sale nothing existed that would entitle the slave to freedom. She had been born of slave parents; had never been taken into free territory, whereby she acquired her right to freedom; in short, that, in law, nothing existed at that time that would entitle the negro to freedom. The purchaser well knew when he purchased the slave, that the people, through and by a convention, could emancipate. No one can be held to warrant against the act of God or the enemies of the king; and it is submitted, that in this country no one can be held to warrant against the people exercising any power they may possess. Most assuredly, if any man ever did attempt to warrant that the people would never emancipate the slaves in this State, he would have required an extra price, and the terms of the warranty would have been clear and explicit. In the case at bar, the terms are those usually found in such instruments, and, for aught that appears, the price agreed to be paid was the fair market value of the negro at the time. There is nothing showing that Phillips intended to warrant against the action of the people.

If it be held that the defence set up in this answer is legitimate, why may not the man who has paid for his negro, freed by the ordinance, sue the person of whom he purchased, and recover the purchase money? The fact that the

one is executed and the other executory, makes no difference. If it is good in one case, it is in the other.

WAGNER, Judge, delivered the opinion of the court.

This was an action commenced in the Boone County Circuit Court, returnable to the November term thereof, 1865, on a promissory note. In the year 1857, the respondent sold and delivered to the appellant, Evans, a certain negro girl named "Clara," for the consideration of one thousand and fifty dollars, for which he gave his promissory note, with Van Horne as surety. In 1861, the note, remaining unpaid, was renewed by the appellants, and suit was brought on the renewed note as above specified.

At the return term, the appellants filed their answer, stating that the note was executed for the purchase money for the negro girl "Clara," and alleging that, at the time of the sale of the negro girl, the respondent made and delivered to Evans his written bill of sale of said negro, whereby he undertook and faithfully promised and warranted said negro "Clara" to be a slave for life, and also undertook and agreed "to warrant and defend the title of said negro 'Clara' to said Evans forever." The answer then averred, as a breach of the promise and undertaking on the part of the respondent, that the said negro "Clara" was not a slave for life; but that thereafter, to-wit, on the 11th day of January, 1865, by virtue of an ordinance abolishing slavery in Missouri, passed in convention on that date, the said negro "Clara," and all her children or issue, were manumitted and declared free. And that by virtue of the passage of the said ordinance, the title of the negro girl "Clara," and of her issue, was defeated and destroyed, and the appellant was thereby deprived of her and their services, by reason whereof, the consideration for which the note was given failed, &c. All that part of the answer setting up a breach of the warranty, and alleging a failure of consideration, was stricken out by the court, because it constituted no legal defence to the cause of action set out in the petition. The ap-

pèllants failing to file an amended answer, judgment was given for the respondent; and this is assigned for error here. It is contended first, that the court erred in entertaining the motion, and should have compelled the party to resort to his demurrer; but the practice is well established, that a motion to strike out an answer which does not set up any legal defence to the action is proper—Sappington v. Jeffries, 15 Mo. 628; Niedelet v. Wales, 16 Mo. 214; Barley v. Cannon, 17 Mo. 595.

The counsel for the appellant assumes that the agreement or undertaking to warrant the title of the girl Clara forever, and that she was a slave for life, amounted to a full covenant, and that she should always continue a slave, and that any act, from whatever source, destroying property in her, constituted such a breach as would make the respondent liable over on his warranty. All warranties, however expressed, are open to such construction, from surrounding circumstances, and the general character of the transaction, and the established usage in similar cases, as will make the engagement of warranty conform to the intention and undertaking of the parties—1 Pars. Contr. 576, 5 ed. Words of warranty should neither be extended nor contracted in their significance, but should be construed according to their fair and rational meaning. The true rule governing in the construction of covenants of warranty, is undoubtedly to look into and ascertain the meaning and intention of the parties, if possible, by an examination of the context of the whole instrument. A party may, however, bind himself by covenant where the law would absolve him from liability on the contract were it not for his express undertaking.

The question to be decided here must depend upon the meaning of the parties, after considering all the surrounding circumstances. The vendor sold the slave and covenanted with the vendee that she was a slave for life, and that he would warrant and defend the title to her forever. It is not denied that she was a slave for life at the time the sale was made and the covenant entered into. The state of slavery

Phillips v. Evans et al.

was her status at that time, made so by the laws of the land, and there is no pretence that there was then anything existing which tended to render the title defective, or to entitle her to freedom. The usual clause inserted in a bill of sale, in the conveyance of that peculiar species of property, was that the person sold was a slave for life; that is, that the person was made a slave by the existing law of the land, and the contract must be presumed to have been entered into with reference to that fact. It is in the very nature of the institution of slavery that it can only exist in a civilized nation by the force of positive law. When the vendor sold his slave, with a covenant that she was a slave for life, he intended nothing more than that the law at that time made her a slave for life. The covenant extended to all defects in the title, and was intended to protect the purchaser against them. But it cannot be presumed that the sovereign act or authority of the government, by which all title or property in slaves was totally annihilated, was in the contemplation of the parties. The emancipation of the slaves, by the sovereign act of the people, was neither anticipated nor thought of when the slave was sold in this case. It was not in the minds of the parties, nor embraced within the purview of the warranty. In case of sale and conveyance of real estate, when the vendor warrants the title, and covenants for peaceable and quiet enjoyment, should the property be swallowed up or destroyed by an earthquake, it will not be contended that such destruction would work a breach of the covenant, rendering the seller responsible. We are unable to distinguish the case supposed from the one presented here at bar. The Ordinance of Emancipation caused a complete annihilation or destruction of all property in slaves. It could not be controlled by the parties, nor was it contemplated by them; and clearly the covenant to warrant and defend the title to the negro, and that she was a slave for life, cannot, by any just construction, be made to apply to such an occurrence.

The judgment of the Circuit Court must therefore be affirmed. Judge Holmes concurs; Judge Lovelace absent.