The State ex rel. Davis v. Rogers.

THE STATE *ex rel.* DAVIS V. ROGERS, *Appellant.*

1. **Pleading**: DEMURRER. Where the answer consists of a general denial and special pleas, and the latter do not in terms admit facts sufficient to entitle plaintiff to judgment, a demurrer to the whole will not lie. The proper method of testing the sufficiency of the special pleas is to demur to them only or move to strike them out.

2. **The Capital of a Private Bank, where Taxable.** While it is ordinarily true, both at common law and under our statutes, that personal property follows the *situs* of the owner, and is taxable in the county of his residence, this rule does not apply to the business capital of a private bank. The effect of our statute is to make this taxable in the county where the business is carried on.

3. **United States Bonds.** The capital of a private bank invested in United States bonds, is not taxable by state authority.

*Appeal from Clinton Circuit Court.*—HON. GEO. W. DUNN, Judge.

REVERSED.

*J. F. Harwood* and *Ramey & Brown* for appellant.

*J. M. Lowe* for es ondent.

PHILIPS, C.—This is an action by the collector of Clinton county to recover taxes on personal property, with penalties and attorney's fee. The petition alleges in substance that the relator is collector of Clinton county, and that having legal authority therefor the officers and agents of said county assessed and levied certain taxes upon personal property of the defendant, to-wit: $5,000 in lawful money, the same being the amount of defendant's capital used by him in carrying on a private bank in the town of Cameron in said county, and known as the Park Bank. These assessments run through the years from 1873 to 1878. The petition alleges demand and refusal of payment, and that on the 15th day of March, 1879, the county court of said county ordered Joseph M. Lowe to bring suit for said taxes, said attorney to receive as his compensation ten per cent

on the amounts collected. Judgment is prayed for $1,-148.35, and $114.80, attorney's fee, and ten per cent interest on said taxes from the 1st day of January, 1879, and for costs.

The answer tenders the general issue as to all the allegations of the petition not thereinafter admitted. It then interposes two special pleas :. 1st, That during all the years for which the taxes were imposed the defendant was a resident tax-payer in the county of DeKalb in said State, and that he had during all that time paid in said county of his residence all the taxes lawfully assessed against him; 2nd, That during all the time aforesaid he was engaged in the business of broker and exchange dealer, under and by virtue of the laws of the State of Missouri, with his office located at the town of Cameron in said Clinton county; that in said business during all said years he received deposits of money from and loaned the same to his customers, and as a matter of safety to his customers, and precaution against the stringency of the money market and financial panics, at the time he opened his office and began business as aforesaid, he deposited with his correspondents (naming them) in the city of New York, state of New York, United States bonds issued by the government of the United States under and by virtue of the acts and laws passed by congress since the 1st day of January, 1861, to the amount of $5,000, exclusive of coupons; that said bonds were what are known as "Five Twenties," and were by law exempt from taxation; that defendant had invested the $5,000 of capital which he had at the beginning of his said business in said government bonds; that they so remained during all the years of said assessments on deposit as aforesaid, and constituted the only capital or investment of capital employed in his said business. The answer then alleges that the assessment of said taxes was made upon the said bonds and no other capital or property.

To the whole of this answer the plaintiff demurred, on the ground that the same constituted no defense to the

action. The demurrer was sustained and judgment rendered on the petition as for want of answer. The defendant brings the case here on appeal.

I. It occurs to me that the demurrer in this case, even were it conceded to be well taken as to the new matter set up, is too broad. It goes to the whole answer including the general denial as well as the matter specially pleaded. Unless in the special pleas there is an expressed or implied admission of all the material allegations of the petition the demurrer should have gone to the new matter alone. It perhaps is inferable from the whole answer that it is admitted there was an assessment made on the capital invested in the defendant's banking business. But it is not admitted that the relator is collector as alleged, or that demand was made, or that Joseph M. Lowe was ordered by the county court to institute the suit, or that he was entitled to the commission claimed and for which the court gave him judgment, or that the personal property assessed was $5,000 in lawful money.

The right to bring this action by the collector for the recovery of personal taxes exists solely by virtue of section 17 of the Revenue Act, (Laws 1877, p. 388,) which provides that the "back tax book" containing the personal list "shall be delivered to the proper collector. The collector shall proceed to collect the tax due thereon     * * in all matters the same as provided in this act in reference to taxes now delinquent." Section 5 of said act provides *inter alia* that "for the purpose of prosecuting suits for taxes under this act, the collector shall have power, with the approval of the county court, to employ such attorneys as he may deem fit, who shall receive as fees in any suit such sum as shall not exceed ten per cent of the amount of taxes actually collected and paid into the treasury, as may be agreed in writing and approved by the county court, before such services are rendered, which sum shall be taxed as costs,     *     *     and no such attorney shall receive any fee or compensation for such services, except as in this

section provided." p. 386. From which it is manifest that the attorney is selected by the collector, and the county court only approves the selection. The collector is the party designated by law to bring the suit, and his warrant therefor is the " back tax book, delivered to him " by the county clerk.

The petition contains no averment as to this warrant, nor that Joseph M. Lowe was properly selected as such attorney. If it could be maintained that the petition was good after verdict as to the authority of the collector to institute the suit, it certainly cannot be said that sufficient was averred to authorize the judgment for $114.80 for attorney's fee; because the statute expressly says: "No such attorney shall receive any fee or compensation, except as in this act provided." Unless he was selected and his selection approved as provided, the court had no right to exact as costs his fee, nor had the court to award judgment therefor. At all events, these were matters put directly in issue by the general denial of the answer. It is perfectly competent, under our Practice Act, to tender in answer the general issue and matters of special defense, provided they be consistent with each other. This has been explicitly held by the Supreme Court in cases in nowise differing in principle from the answer in question. *Rhine v. Montgomery*, 50 Mo. 566; *McAdow v. Ross*, 53 Mo. 202; *Wales v. Chamblin*, 19 Mo. 500; also *Cavender v. Waddingham*, 2 Mo. App. 555, 556; *Nelson v. Brodhack*, 44 Mo. 596.

The proper practice in a case like this, where the plaintiff desires to reach the new matter claimed to constitute no defense to the action, is to demur to the new matter or move to strike it out. *Houston v. Lane*, 39 Mo. 495; *Phillips v. Evans*, 38 Mo. 305.

II. The first matter of special defense set up in the answer, in my opinion, constitutes no defense to the action. It is true the statute, (Wag. Stat., p. 1159, § 6,) declares that " all property, personal by the laws of this State, situate in a county other than the one in which the owner re-

sides, shall be assessed in the county where such owner resides." But it does not, in my opinion, apply to property like that of a private bank. This provision is but declaratory of the well recognized maxim of the common law, *mobilia personam sequuntur*. But a banking institution, while in the nature of personal property, is *sui generis*. The bank as such has an actual *situs*, and by fiction of law the *situs* of the bank is the residence of the owner for the purpose of assessment and taxation. These are regulated by special provisions of the Revenue Law, distinct from the ordinary modes of assessment respecting other personal property. While the individual banker or broker is not a corporation, subject to its incidents and duties, it is, unlike other private business, subject to special statutory regulations. R. S. 1879, chap. 85. "Of Brokers;" Gen. St. 1865, chap. 94. Such bankers or brokers are required to take out license before they can ply their vocation. Sections 4338 and 4339 clearly indicate that this license is to be obtained in the county where the business is conducted, and limit the right to conduct it to one place in the county. It will not be pretended, I presume, by defendant's counsel, that he could obtain such license elsewhere than in the county where the banking was to be done. The courts will assume that the defendant complied with the law, penal in its requirements, and, therefore, that he was doing business as a broker in Clinton county under a license obtained from the proper officer of that county. As such licensee he was amenable to the constituted authorities of that county, in all matters pertaining thereto.

Reading, in connection with the foregoing sections, section 35, page 1165, Wagner's Statutes, which is as follows: "Private bankers, brokers, money brokers and exchange dealers shall in like manner make return of all moneys or values of any description invested in or used in their business, which shall be taxed as other personal property; provided, however, that the license hereafter required to be paid by such bankers, brokers and dealers, in addition to such taxes,

shall not exceed $100 per annum;" there can be no doubt but the legislature contemplated that the bank was to be assessed in the county where situated. The provision that "the license shall not exceed $100 per annum," shows clearly that the same local officials who regulate and grant the license also assess and collect the tax. The license coming from the county of Clinton carried with it the corresponding obligation to pay there the taxes for local purposes and local protection. As is fitly said by the court in *Miner v. Village of Fredonia*, 27 N. Y. 158, "A banking association has a *situs*, and is an inhabitant of the city, town or ward in which its office of discount and deposit is located, irrespective of the residence of the associates, and is taxable in that place. The policy of the law would apply the same rule to the banks of individual bankers and make them local and subject to local assessment and taxation irrespective of the residence of the banker or his associates. The statutes take from the banking capital much of its movable character and discriminate it from the person of the owner. It is, so far as the public is concerned, entirely separated and distinguished from the other property of the same individual, and a new character given to it." To the same effect are the cases of *Gardiner, etc., v. Gardiner*, 5 Me. 133, and *Bates v. Mobile*, 46 Ala. 158. The correctness of this principle is recognized and ably sustained in the following cases of our own Supreme Court: *City of St. Louis v. Wiggins Ferry Co.*, 40 Mo. 586, 587, 588; *State ex rel. Taylor v. St. Louis Co. Ct.*, 47 Mo. 597, 600.

III. The more serious and important question presented for determination in this record is that raised in the second special defense. It is essential, in the consideration of this issue, to keep in mind that the facts as stated in the answer stand admitted by the demurrer. What are these facts? Briefly, they are that the defendant's bank is not a corporation, neither is it a national bank or association; but it is a private concern, owned solely by the defendant, the whole capital stock of which consists of $5,000 represented

by United States bonds on deposit in the state of New York, so placed for the security of customers, and a safeguard against monetary troubles and panics. The answer expressly avers that the defendant had no other capital invested in his business, and that the taxes sued for by plaintiff were assessed upon this capital so invested in said United States non-taxable bonds, and on "no other capital or property." Such being admitted by the demurrer to be the facts, how can the action of the circuit court be sustained?

Whatever the publicist or political economist may think of the policy or wisdom of a public law that exempts such class of property from taxation, the question has passed beyond the domain of discussion. It is *res judicata.* Nor have we anything to do with the propriety or impropriety of the defendant's course in this matter. That belongs to ethics rather than the judiciary. More than half a century ago, in the case of *Weston v. City of Charleston,* 2 Pet. 449, the Supreme Court of the United States, the final arbiter in questions arising under the federal constitution and laws, decided that a tax on stocks of the United States, held by an individual, is a tax on the power " to borrow money on the credit of the United States," and, therefore, the state had no power to impose a tax thereon. Chief Justice Marshall, in delivering the opinion of the court, said: " The people, for objects the most important which can occur in the progress of nations, have empowered their government to make these anticipations, 'to borrow money on the credit of the United States.' Can anything be more dangerous or injurious, than the admission of a principle which authorizes every state and every corporation in the Union, which possess the right of taxation, to burden the exercise of this power at their discretion? If the right to impose a tax exists, it is a right which in its nature acknowledges no limits. It may be carried to any extent within the jurisdiction of the state or corporation which imposes it, which the will of each state or corpora-

19—79

tion may prescribe. The tax on government stock is a tax on the contract, a tax on the power to borrow money on the credit of the United States, and consequently repugnant to the constitution."

Evoking this constitutional prerogative, the congress of the United States, in 1862 and subsequently, provided for the issue of certificates and bonds, for the purpose of raising money. Section 3701, Revised Statutes United States, declares that "all stocks, bonds treasury notes and other obligations of the United States shall be exempt from taxation by or under state or municipal or local authority." There is no provision of law, enacted by congress, making an exception to this inhibition and exemption. Section 41, of the act of 1864, (§ 5219, R. S. U.S.,) permits "the shares in any association to be included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located." But even under this permissive statute the courts have repeatedly held that an assessment on the capital stock of a banking association is unauthorized. It can only be made on the share of the individual stockholder, and in the manner prescribed by law. In all other cases congress has scrupulously guarded against the imposition of any tax on the bonds or securities as such. Even the internal revenue law, as searching and comprehensive as it is—reaching out with infinite minuteness to almost every conceivable character of property and industry, has not touched such bonds and securities, (§ 3408, R. S. U. S.,) while laying exactions on deposits, the capital of any bank, association, company, corporation, and on the capital employed by any person in the business of banking, yet touches only the capital employed "beyond the average amount invested in United States bonds."

This question came before the Supreme Court of the United States in 1863, in the case of the *Bank of Commerce v. New York City*, 2 Black 620. The bank was a state corporation. The greater part of its capital "was invested in

stocks, bonds and securities of the United States." The tax commissioners of the state undertook to subject this part of the capital to assessment and taxation for local purposes. The statute law of New York, applicable to such assessments, was, in effect, the same as ours. The court say, (p. 629): "This stock is held by the bank the same as such stocks are held by individuals, and subject to taxation or exemption by state authority." The court held that the case, in principle, was identical with that of *Weston v. City of Charleston, supra*, and the assessment was, therefore, void. This question came again from the state of New York in the *Bank Tax Case*, 2 Wall. 200. After the decision in *Bank of Commerce v. New York City, supra*, the state in 1863 enacted a new statute which declared that "all banks, banking associations, etc., shall be liable to taxation on a valuation equal to the amount of their capital stock paid or secured to be paid in, and their surplus earnings, etc., in a manner provided by law." The bank commissioners under this statute made an assessment on the capital invested by the state banks in government securities. The court say, what is quite pertinent to the facts disclosed in defendant's answer here, that "it is not easy to separate the property in which the capital is invested from the capital itself. The capital is an ideal thing, fictitious, but in the theory and practical operation of the system, is composed of substantial property, and which gives value and solidity to the stock of the institution. It is the foundation of its credit in the business community." The court then proceed to show that under the New York statute (substantially the same as the Missouri statute) the tax is imposed on the property of the banks in contra-distinction from a tax upon a mere privilege or franchise. In conclusion the court say: "Having come to the conclusion that the tax on the capital of the bank is a tax on the property of the institution, and which consists of the stocks of the United States, we do not perceive how the case can be distinguished from that of the *Bank of Commerce v. New York City, supra*.

In *Van Allen v. The Assessors*, 3 Wall. 573, and *Bradley v. People*, 4 Wall. 459, it was again held that while the shares of the individual stockholder in a national bank might be taxed, the effort of the state to tax the capital was void. It was attempted there to sustain the assessments on the ground that the tax on the capital was equivalent to a tax on the shares as it respected and affected the shareholders. "But," say the court, "admitting it to be so, yet, inasmuch as the capital of the state banks may consist of the bonds of the United States which are exempt from state taxation, it is not easy to see that the tax on the capital is equivalent to a tax on the shares." 4 Wall. 462. The New York cases got back again before the Supreme Court of the United States in 7 Wall. 16, and again the court declared the law to be that the certificates of indebtedness issued by federal authority to the government creditors are beyond the taxing power of the state. And in the case of *Bank v. Supervisors*, 7 Wall. 26, the court applied the same-rule of exemption to United States notes issued under the Loan and Currency Acts of 1862 and 1863.

This question came likewise before the Supreme Court of this State in *St. Louis Building & Saving Association v. Lightner*, 42 Mo. 426. The instruction asked in that case was, that if the bank had invested its capital stock in the bonds of the United States and said amount of capital so invested was assessed for taxation under the State law, then the same was void. The court followed the principle of the federal decisions herein noted, and held that the instruction should have been given. When this case was again before the court, (47 Mo. 393,) the court held simply that the precept handed the officer was so far a protection as to exempt him from personal liability, especially as the officer of the bank did not object to the manner of the assessment; but the principle is re-asserted that the bonds—the capital of the bank—are non-taxable—"the shares of the capital stock of a corporation can be taxed." But the defendant

here is not a corporation, nor is he an association. The answer states expressly that this tax was laid on the capital stock in government bonds, of an individual, sole, private banker, and on no "other capital or property." This the act of congress and the supreme judicial tribunal under the constitution of the United States declare was not within the power of the local authorities of Clinton county to impose or demand. Whatever different result I might prefer in this case, I am here only to declare, *ita lex scripta est.*

The judgment of the circuit court should, in my opinion, be reversed and the cause remanded. All the commissioners concur.

So ordered, NORTON, J., concurring in the result.