The GARDINER COTTON AND WOOLEN FACTORY COMPANY *vs.* The inhabitants of GARDINER.

The capital employed in manufactures, within the meaning of *Stat.* 1825, *ch* 288, includes whatever is essential to the prosecution of the business, whether it be fixed or circulating capital. And it is immaterial whether it is derived from assessments, or loans, or otherwise.

The merchandize of a manufacturing corporation, employed in trade in a store, is not taxable to the corporation, in the town where the store is situated: but to the individual holders of the stock; the provision usually inserted in the annual tax acts being intended to apply only to individuals, having their domicil in towns other than the place of their business.

THIS action, which was *assumpsit* for money had and received, came before the court upon a case stated by the parties, containing the following facts.

The assessors of the town of *Gardiner*, for the year 1825, assessed the property of the plaintiffs, for State, county, town and school taxes, in the sum of $104,67; which was their due proportion, if their property was liable to taxation. This sum was levied by distress.

## Gardiner C. & W. Factory Co. v. Gardiner.

The property assessed consisted of their factory house, valued at 3000 dollars; a dwelling house and lot valued at 650 dollars, which was used as a boarding house for their workmen; a store and lot valued at 750 dollars; stock and other personal property in the factory house, valued at 5580 dollars; and goods and merchandize in the store, valued at 2500 dollars. The machinery in the factory was not assessed. The assessors had given seasonable notice to the plaintiffs to bring in a true list of their taxable property; which they declined to do, on the ground that the corporation was exempted from taxation, by the provisions of *Stat.* 1825, *ch.* 288, having, as they said, thirty thousand dollars " employed in the manufacturing of cotton."

The corporation was erected *March* 1, 1810, and was organized in the same year; from which time, to the time of the assessment, it had been employed in the business of manufacturing cotton. The stock of the company was originally divided into one hundred shares; the original price of which, with the assessments thereon, amounted on the 28th of *August* 1820, to 17,000 dollars; the whole of which was paid to their treasurer, and expended in the erection of buildings, the purchase of machinery, and other business of the corporation.

In *January* 1823, the plaintiffs enlarged their business, by creating 100 new shares; and in order to determine at what sum the new shares should be sold, the whole property and estate of the corporation was carefully appraised, and found to be worth 12,500 dollars; in conformity to which the new shares were valued at 125 dollars each, and sold for the same sum, thus increasing the property of the corporation to 25,000 dollars. Of the 12,500 dollars received for the price of the new stock, 3000 dollars was appropriated for enlarging and repairing the factory house, and 8000 dollars for the purchase of new machinery.

In the autumn of 1823, the agent of the corporation purchased a lot of land in *Gardiner,* with a store upon it, for 1200 dollars; which was paid for by money borrowed of the *Gardiner* bank, being part of a loan of 4500 dollars mentioned hereafter. The residue of this loan was applied to the payment of debts due for goods, with which the agent stocked the store. The business of this store, which con-

Gardiner C. & W. Factory Co. v. Gardiner.

tained such goods as were usually sold in other retail variety stores, was conducted by clerks, and was not confined to the manufacturing business of the corporation. In the autumn of 1825, the business of the store was discontinued ; and the land, buildings and goods, sold by auction.

On the 15th of *March*, 1824, the plaintiffs borrowed of the *Gardiner* bank 5000 dollars, and of the *Kennebec* bank 5000 dollars; no part of which has ever been repaid. Of these sums 8500 dollars was expended in cotton, and 1500 dollars in machinery. On the 21st of *February*, 1825, they borrowed of the *Gardiner* bank the above sum of 4500 dollars ; of which 1100 dollars were repaid prior to the assessment of the tax in question, and the residue is still due.

At the time of making the assessment complained of, there were fifty-four shares of the corporate stock owned by persons resident in *Gardiner*, and one hundred and forty-six shares owned by persons not resident in that town ; of which nineteen were owned by citizens of Massachusetts.

Upon these facts, the whole case was referred to the court, for the entry of such judgment as they should deem the law to require.

*Allen*, for the plaintiffs, shewed that, by taking the 10,000 dollars borrowed of the two banks in *March*, 1824, and actually invested in manufacturing capital, with the amount of the new stock actually paid in 1823 ; and adding to these sums, either the original cost of the old stock, or the appraised value of the property in *March*, 1824 ; the capital of the corporation exceeded thirty thousand dollars. And hereupon he contended that the corporation was exempted from taxation, within the meaning of *Stat.* 1825, *ch.* 288. It was not material from what sources the capital was derived ; nor whether it was actively or profitably employed, or otherwise ; if it was invested in the business of the establishment, within the limits of their corporate powers.

But, independant of the provisions of that statute, the tax was illegal ; because the shares owned by persons not living in *Gardiner* were not taxable in that town ; and because the stock owned by inhabitants of that town should have been assessed to them, and not to

the corporation.  *Salem Iron Factory Co. v. Danvers,* 10. *Mass.* 514.  *Amesbury W. & C. Man. Co. v. Amesbury,* 17. *Mass.* 461.

*Evans,* for the defendants, considered it as undisputed, that the plaintiffs were liable to be taxed as a corporation, for their real estate ; and he argued from this, that they were also liable to be taxed in the same manner for their personal estate, in the town where the corporation was located.   The decisions in Massachusetts to the contrary, were made to avoid the flagrant injustice of assessing the same property twice ; the shares being then taxable in the towns where the holders of them resided.   But he insisted that it was not so now, in this State, the tax act of 1825, *sec.* 5, having provided that stock employed in manufactories should be taxed in the town where the same may be used.   This construction is aided by recurrence to *Stat.* 1825, *ch.* 288, cited on the other side ; which exempts such property from taxation in those towns, only on condition of its amounting to 30,000 dollars.   If it were not, in the contemplation of the legislature, taxable in those towns, the exemption would be superfluous.   In that State, the general rule is followed, of taxing all personal property to the person.   But, in this, an exception is introduced in the case of stock in a manufacturing corporation ; and upon good reason ; for, if such property were not taxed to the corporation, the holders of stock, residing out of the State, would pay nothing ; and the State would be deprived of the aid of a large portion of its capital, in sustaining the public burdens.

He further contended that the plaintiffs were not within the exemption provided by *Stat.* 1825, *ch.* 288 ; the words " employed in the manufacturing," being applicable only to circulating capital.  The object of the law was to encourage active enterprize.   Hence, in the second section, the assessors are required not to include, in their valuation of taxable property, works established, and " put in operation." So that whatever capital may be invested in works, it continued to be taxable, until it not only amounted to the sum mentioned, but was put into actual operation.   The policy of the legislature was to increase the amount of capital actively employed in manufactures ;— but not to favor dormant and unproductive investments.   And of such capital the case does not shew a sufficiency, to bring the plain--

tiffs within the exemption claimed. For if, from the amount of property as disclosed, is deducted the value of the real estate, machinery and debts due to the corporation, the remainder will fall far short of the amount required by the statute. Upon no principle ought the borrowed monies to be taken into the account, because of the abuses to which such a rule would be open, from the temptation it would create to borrow funds just before the day to which all assessments have relation, upon the condition of returning them as soon as that object should be effected.

He contended, lastly, that upon any view of the case, it was merely a case of over taxation ; and that therefore the remedy was misconceived. The plaintiffs should have furnished the assessors with a list of their property, and, if aggrieved by the assessment, might have appealed to the Court of Sessions, as the statute provides. For here was property unquestionably liable to be taxed, because having no relation to manufactures.

*Allen*, in reply, said that the remedy by appeal to the Court of Sessions for over taxation, applied only to cases where property, liable to assessment, is valued at too high a rate ; but not to cases where one is taxed for property which is not liable to any assessment. For upon the defendants' principle, the trial of all questions of this sort would be drawn away from this Court, and the constitutional privilege of trial by jury be deeply invaded. If, however, the Sessions have any jurisdiction over such cases, it is only concurrently with the remedy by action in the courts of common law.

WESTON J. delivered the opinion of the Court, at the ensuing *June* term, in *Penobscot.*

The counsel for the plaintiffs insists, first, that they are exempted from the whole tax, in virtue of the statute of 1825, *ch.* 288, to exempt from taxation manufacturing companies of cotton, wool, iron and steel, by which the individual shares, property or stock, both real and personal, of such companies, thereafter to be incorporated, were exempted from taxation for six years, and such companies then existing for five years, which might be appropriated for the purchase

Gardiner C. & W. Factory Co. *v.* Gardiner.

of sites, erection of works, buildings, machinery, raw material, and capital in whatever shape, necessary for the full and complete use and operation of those works : Provided, that a sum, not less than thirty thousand dollars, shall be employed by such incorporation in the manufacturing of the articles in said act mentioned. Secondly, that, by virtue of the tax act of 1825, the personal property could not be taxed to the factory, and that the shares of those who lived out of *Gardiner* could not be taxed in that town, and that the shares of such as lived there, could be taxed only to the individual *holders of* the stock. To this the counsel for the defendants replied, that the plaintiffs have not brought themselves within the provisions of the act first cited ; not having employed the sum of thirty thousand dollars in manufacturing ; and that they have a right to tax the personal property of the factory to the plaintiffs, in virtue of the fifth section of the tax act of 1825, which provides that all goods, wares, or merchandize, or other stock in trade, including stock employed in manufactories, ships or vessels, shall be taxed in the town, plantation or other place, where they are sold, used or improved, notwithstanding the owner or owners may reside in some other place : Provided, such person or persons do occupy a shop, store or wharf in such town, plantation or other place, and not where they may dwell and have their home.

It is conceded that if, in making out the thirty thousand dollars, it is competent for the company to estimate their building and the ten thousand dollars they procured on loan, their property, except the store and goods, is exempted from taxation, in virtue of the act of 1825, *ch.* 288. But it is contended, that the best writers upon this subject make a distinction between fixed and circulating capital ; and that it is the latter only, which in this case can be fairly said to be employed in manufacturing ; and that therefore the value of the factory building ought to be deducted from the estimate which would reduce it below thirty thousand dollars. Or, secondly, that the ten thousand dollars obtained on loan, which may be offset by debts due to the plaintiffs, should be deducted, which would also bring the amount below that which would entitle the plaintiffs to the exemption they claim. But we are not satisfied that either of these views is

Gardiner C. & W. Factory Co. *v.* Gardiner.

well founded. The capital employed in manufacturing, or in a manufacturing establishment, embraces whatever is essential to the prosecution of the business. To this purpose, the factory building is as necessary as the machinery, or the raw material. As well might it be urged that the money invested in a saw mill, is not capital employed in the manufacturing of boards. If the amount prescribed by the statute is actually employed in manufacturing, it is entirely immaterial from what sources derived; whether from assessments paid by the stockholders, or from loan, or partly from both.

We are therefore of opinion, that all the property valued by the assessors, except the store and lot, and the merchandize therein, was exempted from taxation, in virtue of the act first cited. And we are further of opinion, that the personal property of the plaintiffs could not be taxed to the company, under the fifth section of the tax act; as by that section it was intended only to tax individuals having their domicil in other towns, for stock of this description, and other personal property, in the town where they transact their business. This construction was expressly given to a similar section in the tax act of Massachusetts, in the case of the *Amesbury Woolen & Cotton Manufacturing Company v. The inhabitants of Amesbury* 17. *Mass.* 461. If therefore the merchandize in the store is not exempted from taxation by the act of 1825, *ch.* 288, and it does not appear to us that it is; yet as personal property, according to the tax act, and the principles decided in the case of the *Salem Iron Factory Company v. The inhabitants of Danvers* 10. *Mass.* 514, it cannot be taxed to the corporation, but to the several holders of the stock. It results that the plaintiffs were not liable to be assessed for any part of their property, included in the valuation, except the store and the lot upon which it stands. According to the agreement of the parties, the defendants are to be defaulted, and the plaintiffs to have judgment for the sum by them paid, deducting therefrom the amount of the taxes assessed on the store and lot; with interest on the balance, from the time of payment to the time of entering up judgment.