## FARRIS, Appellant, *v.* VANNIER, Respondent.

1. **Constitutional Law — Taxes, Local — Foreign Use — Validity.**
     Section 17, chap. 28, Pol. C., as amended in 1885, providing that per-
     sonal property in any unorganized county shall be subject "to taxation in
     the nearest organized county," is invalid in so far as it permits the collection
     of a county tax in an unorganized county for the use and benefit of the
     organized county.

2. **Same — General Tax — Validity.**
     A territorial tax collected under this section in an unorganized county
     is not invalid, nor is the section (there being no authority for taxing the
     real estate in such counties) in conflict with § 1925, R. S. U. S., prohibit-
     ing the legislature from making "any discrimination in taxing different
     kinds of property," nor is the section local or special in its nature.
     THOMAS, J., dissenting.

(Argued Feb. 16, 1888; reversed May 25, 1888; opinion filed Feb. 19, 1889.)

*T. R. Selmes* and *J. C. Bullett, Jr.,* for appellant.

The only question is, whether § 2, Laws 1885, p. 191, in so
far as it authorizes the taxation of personal property in unorgan-
ized counties, is constitutional.

It is unconstitutional for, (1) it authorizes taxation of persons
and property of a community for purposes not public and local to
such community; (2) it discriminates in the taxation of different
kinds of property, in contravention of the organic act of the

territory; and (3), it denies to persons within the jurisdiction of the territory the equal protection of the laws.

Upon the first point, see Cooley, Taxation (2d ed.), chap. 4, 5; Cooley, Const. Lim. (5th ed.), chap. 14; 1 Desty, Taxation, chap. 2; Loan Association v. Topeka, 20 Wall. 662; Cole v. La Grange, 113 U. S. 1; Sharpless v. Mayor, 21 Pa. St. 147, 59 Am. Dec. 759; Philadelphia v. Wood, 39 Pa. St. 82; Speer v. School Directors, 50 id. 150; Grimm v. Weissenberg, 57 id. 433; Washington Avenue, 69 id. 352; Hammett v. Philadelphia, 65 id. 146; In re Saw-mill Run Bridge, 85 id. 163; Clarke v. City, 13 How. Pr. 204; Weismer v. Village, 64 N. Y. 91; People v. Bachellor, 53 id. 128; Clarke v. City, 24 Barb. 446; Fruland v. Hastings, 10 Alien, 570; Lowell v. Boston, 111 Mass. 454; Opinions of Justices, 58 Me. 590; Allen v. Inhabitants of Jay, 60 id. 124; Perry v. Keene, 56 N. H. 514; Town of Bennington v. Park, 50 Vt. 178; Atkins v. Town of Randolph, 31 id. 246; Coster v. Tide-Water Co., 3 C. E. Green, 54; State v. Jackson, 2 Vroom, 189; State v. Demarest, 3 id. 528; Talbot Co. v. Queen Anne's Co., 50 Md. 245; McBean v. Chandler, 9 Heisk. 349; Stein v. Mayor, 24 Ala. 591; Lexington v. McQuillans, 9 Dana, 513; Cheaney v. Hooser, 9 B. Mon. 330; City v. Southgate, 15 id. 491; Swift v. City of Newport, 7 Bush, 37; Sleight v. People, 74 Ill. 47; Livingston Co. v. Weider, 64 id. 428; Trustees v. People, 63 id. 299; Taylor v. Thompson, 42 id. 9; People v. Salem, 20 Mich. 474; Wells v. City, 22 Mo. 384; State v. Leffingwell, 54 id. 458; National Bank v. Iola, 9 Kan. 689; State v. Osawkee, 14 id. 418; Railroad Co. v. Smith, 23 id. 745; Stockton, etc., R. Co. v. City, 41 Cal. 147; Davidson v. Ramsey Co., 18 Minn. 482; Morford v. Unger, 8 Ia. 182; Butler v. City, 11 id. 433; Burlington, etc., R. Co. v. Spearman, 12 id. 112; Buell v. Ball, 20 id. 282; Deeds v. Sanborn, 26 id. 419; Hanson v. Vernon, 27 id. 28; Deiman v. Fort Madison, 30 id. 542; Brodhead v. City, 19 Wis. 624; State v. Haben, 22 id. 660; Curtis v. Whipple, 24 id. 350; State v. Tappan, 29 id. 664; Soens v. City, 10 id. 279; Lumsden v. Cross, 10 id. 282; Knowlton v. Supervisors, 9 id. 410; Whitney v. Sheboygan, etc., R. Co., 25 id. 167.

The section authorizes Stark county to tax Billings county for its governmental purposes. It is conceded that the latter county

is in no way interested or concerned in the objects for which the taxes (except the general territorial tax) were levied, and that the taxes are to be expended wholly within Stark county without any benefit accruing to Billings county, or its inhabitants.

The act discriminates in the taxation of different kinds of property in violation of the organic act. § 6, R. S. U. S., § 1925; People v. McCreery, 34 Cal. 433; People v. Whartenby, 38 id. 461; Lick v. Austin, 43 id. 590; Fields v. Commissioners, 36 Ohio St. 476; Pike v. State, 5 Ark. 204; Crow v. State, 14 Mo. 237, 262; Hamilton v. St. Louis, 15 id. 3; State v. North, 27 id. 464; State v. County, 34 id. 546.

The case of Francis v. Atchison, etc., R. R. Co., 19 Kan. 303, seems at first glance to sustain the view that a tax law which fails to provide for the taxation of certain kinds of property is not for that reason invalid, but it is clearly distinguishable from the case at bar. It is analogous to the case of Wisconsin C. R. R. Co. v. Taylor, 52 Wis. 37, neither of which is applicable to the facts here presented.

The act is unconstitutional because it denies to persons within the territory the equal protection of the laws. Cooley, Taxation (2d ed.), 5; Santa Clara Co. v. Southern P. R. R. Co., 18 Fed. Rep. 385; R. R. Tax Cases, 13 id. 722; Northern P. R. R. Co. v. Carland, 5 Mont. 146, 3 Pac. Rep. 134.

*William Gibson* and *Flannery & Cooke*, for respondent.

All costs of criminal prosecutions in an unorganized county when not collected from it, are paid out of the territorial treasury. Laws 1881, p. 110. This would render the general tax of public concern. Of such concern also is the school, road and bridge tax. Kelly v. Pittsburgh, 104 U. S. 78; Township v. Township, 39 Mich. 424; Cooley, Taxation, 94, 478; People v. Supervisors, 20 N. Y. 255; Railroad Co. v. County, 16 Wall. 667.

Civil and criminal jurisdiction is extended over unorganized counties, and the general tax is required to meet the expenses thereof. The statute is also valid under the power to create taxing districts. Cooley, 110; People v. Lawrence, 41 N. Y. 141; Litchfield v. Vernon, id. 123; Malchus v. Heghlands, 4 Bush,

547; Salem Turnpike, etc., Co. v. Essex Co., 100 Mass. 282; Commissioner, etc. v. Commissioner, etc., 92 U. S. 307.

That the act discriminates in the taxation of different kinds of property, in violation of the organic act, is not well taken. The legislative power extends to all rightful subjects of legislation. R. S. U. S., § 1851. This includes the power to levy taxes.

The objection to the contention that section 1925, R. S. U. S., renders all property subject to taxation, is that the section is not a grant of power but a restriction upon the legislative grant of section 1851. The only power to levy taxes is contained in this general grant, and is full and complete, subject to the prohibitions and restrictions of section 1925. Winona & St. P. R. R. Co. v. County, 3 Dak. 1. The meaning of this restriction is that when the legislature has made real and personal property subject to taxation it must be taxed in proportion to its value and no higher or lower rate shall be levied upon the one than the other. The power to determine what property is subject to taxation necessarily implies the power to exempt. The legislature has always exercised this power. Laws 1862, p. 420. Specific exemption of property from taxation has been made from the beginning, and the power to do so has never been challenged before. That the power to do so exists under limitations similar to those existing here, see Wisconsin C. R. R. Co. v. Taylor, 52 Wis. 37; Francis v. Atchison, T. & S. F. R. R. Co., 19 Kan. 303; Roscommon v. Midland, 39 Mich. 424; Flan. C. Co. v. Fought, 5 S. W. Rep. 494.

The contention that the act is unconstitutional in that it denies to persons within the territory the equal protection of the laws, is answered in his having the protection of the laws as above shown.

THOMAS, J. This action was brought by the plaintiff for the recovery of certain taxes paid by him under protest. The complaint alleges, *inter alia*, that plaintiff was at the time of the grievances complained of a resident of the unorganized county of Billings, and owner of real and personal property therein, and had no property in the county of Stark. That on the 12th day of March, 1885, the legislature of the territory passed an act entitled "An act to amend section 17 of chapter 28 of the Political Code," and, among other things, provided as follows: "When any personal property is situated and kept in any unorganized county of this ter-

ritory, then such property shall be subject to taxation in the nearest organized county thereto, and shall be listed and assessed by the assessor of said nearest organized county ; and when said unorganized county borders upon two or more organized counties, then said property shall be assessed and taxed in that organized county having the greatest extent of contiguous boundary line."

That pursuant to said act, in the year of 1885, the officers of said Stark county, authorized by the laws of this territory to assess property in said Stark county for the purposes of taxation, and to levy taxes thereon, claimed to have the right and pretended to assess all the personal property of the plaintiff situate in said Billings county, for the purpose of taxation, and to levy certain taxes thereon, to-wit, territorial, general school, bridge, and road, and general county taxes, amounting in the aggregate to the sum of $29.20.

That the assessment, levy and collection of said taxes were illegal because — *First*, said property was never taxable by Stark county; *second*, that the act of 1885 is in conflict with the provision of the organic act in relation to taxation, and therefore void ; *third*, the tax is for the exclusive use of Stark county, and to be expended therein, with the exception of the territorial tax, and gives to Billings county and the residents thereof no benefit, directly or indirectly ; *fourth*, that there was real estate in Billings county owned by plaintiff and others, none of which was assessed or taxed, but under said act was free therefrom ; *fifth*, that said Stark county issued its warrant to its treasurer, the defendant, to collect said taxes, who demanded the same of plaintiff, which was refused, and thereupon defendant levied upon plaintiff's property, and was about to sell the same, to prevent which plaintiff, under protest, paid said taxes to said defendant, with interest and costs, amounting to $29.40.

To this complaint defendant interposed a general demurrer, which was sustained by the district court, *pro forma*, and judgment was rendered thereon in favor of the defendant, from which said judgment plaintiff appeals to this court.

The plaintiff contends that the act of 1885 is unconstitutional for the following reasons : *First*, it authorizes taxation of personal property of a community for purposes not public or local to it;

*second,* it discriminates in the taxation of different kinds of property in contravention of the organic act; *third,* it denies to persons within the territory the equal protection of the laws.

The material allegations of the complaint are admitted by the demurrer. It is therefore a fact of record that the taxes complained of were imposed and collected for the exclusive use and benefit of Stark county, and the moneys raised thereby were to be expended within said Stark county, except the territorial tax, and the residents of Billings county were not in any legal sense interested in any of the objects of said expenditure.

The organic act of the territory (§ 1925) declares that the legislature " shall not pass any law impairing the rights of private property, nor make any discrimination in taxing different kinds of property ; but all property subject to taxation shall be taxed in proportion to its value."

The questions presented are important, and of great public interest, and are therefore entitled to, and have received, our most careful consideration.

The validity of this tax mustbe determined from the organic act and such other legal principles as may be applicable.

Under the second point above named the appellant contends that the legislature of this territory has no power to exempt any property from taxation except that which is expressly exempted in the organic act; the legislature cannot declare what property shall be subject to taxation, but must tax every species of property not exempt by the organic act. We do not think that this objection is well taken, or that it is necessarily involved in this' case, and, as the legislature of the territory has frequently exercised this right, which has been acquiesced in and recognized by all classes as a legitimate exercise of power, we do not feel authorized to call it in question here. It is a doctrine well established by the courts that the right to exempt is incident to the right to tax, and is an ordinary exercise of the power of sovereignty, and this right exists unless prohibited by some constitutional or organic provision. Railroad Co. v. Taylor, 52 Wis. 42, 8 N. W. Rep. 833 ; Gilman v. Sheboygan, 2 Black, 510 ; Cooley, Taxation, 145 ; 1 Desty, Taxation, 124.

As said before, the right to exempt has been recognized and

acted upon since the organization of this territory, and we will not now disturb or cast doubt or reproach upon it by a discussion which would in any event be mere *dictum*, as this question is not involved in this case, for the act in question is not, in our opinion, an attempt to exempt any kind of property from taxation.

Under this act an attempt is made to assess and tax personal property in an unorganized county, leaving the real property untaxed, and to levy this tax for the use and benefit of another organized county, regardless of the question whether the two counties are in the same judicial district, or whether said counties have been attached for judicial, revenue, or other purposes, but it is sought to be done simply upon a question of proximity.

This legislation cannot, in our opinion, be properly referable to the exercise of the power of exemption, though it may possibly have this effect when it discriminates between different kinds of property by taxing one and not the other.

It is contended by plaintiff that this act provides for the taxation of a community for purposes not public or local to it. If this proposition be true, this tax can hardly be sustained. Cooley, Taxation, 105; 1 Desty, Taxation, 285.

It is a fact admitted of record that this tax was for the exclusive use and benefit of Stark county, and that the money raised by it was to be expended within Stark county, and that the county of Billings did not and will not receive any benefit from said tax, either directly or indirectly, but it was to be expended for objects entirely local to Stark county, and foreign to Billings county. If this be so, how can this tax be sustained? It is a well-established doctrine that taxation in order to be valid must be of a public nature, or for a public purpose, and must also be local. "It is the essence of taxation that it should compel the discharge of a burden by those upon whom it rests." An attempt to compel one county or municipality to pay a charge properly resting upon the inhabitants of another separate and distinct district or community would be an arbitrary and unauthorized exercise of power. It would be taking private property for private uses, and in no proper sense could it be regarded as taxation, but rather in the nature of confiscation. Cooley, Taxation, chap. 5, pp. 144, 145; 1 Desty, Taxation, 26, 27; Hammett v. Philadelphia, 65 Pa. St.

146, 151 ; Dorgan v. Boston, 12 Allen, 223 ; In re Town of Flatbush, 60 N. Y. 398.

It is true that it is not necessary that the money raised by taxation should always be expended within the district where it is levied and collected, but it may be expended for objects outside of the district in which the residents of the district have in a legal sense an interest. District interest is the test whether an object is or is not a proper subject of taxation. Cooley, *supra ;* 1 Desty, *supra.*

It seems to us that this law is an attempt on the part of the legislature to tax one community for the benefit of another, and is therefore void from the fact that all taxation must be public and local, and for objects in which those who pay the tax have, in a legal sense, some interest, and from which they may receive some benefit.

As said before, it is admitted of record in this case that the tax collected of the residents of Billings county was to be used and expended in matters entirely local to the county of Stark ; and to sustain such a tax would not only be unjust and inequitable, but would be to hold that the legislature, under color of exercising the power of taxation, might appropriate private property for private uses.

While equal, uniform, and just taxation is hardly attainable under any system of human government, yet in this country most of the states have incorporated into their constitutions express provisions that taxation shall be equal and uniform ; and, while this language is not used in our organic act, we think that the prohibition contained therein against discrimination in taxation can hardly be effectually enforced without the adoption of some system that shall be equal and uniform. Can it be said that a system of taxation which taxes one community for the exclusive use and benefit of another is in anywise equal or uniform as to these communities? There are some fundamental principles which must be observed in every system of taxation. They should not only be for public purposes, but for purposes in which the party taxed has an interest, and from which he can and may receive some benefit. 1 Desty, Taxation, *supra ;* Cooley, Taxation, *supra.* It is needless to discuss at length a possibility of Billings county or the plain-

tiff receiving any benefit from, or being in any manner interested in, the tax collected under this law, when the fact of record here is contrariwise by reason of the allegation in the complaint, and the effect of the demurrer thereon.

We are, therefore, of the opinion that under the record as it appears in this case the county or local tax collected of the plaintiff was for purposes local to Stark county, and in which the plaintiff had no interest, and was, therefore, wrongfully and illegally collected of him.

But, it is contended by the respondent, the plaintiff and Billings county were interested in this tax, and benefited by it, because of the extension over this county of the civil and criminal jurisdiction of the justices of the peace of Stark county, and the service of process in the former county by the officers of the latter. *Vide* Laws 1881, p. 110, § 15.

A reference to this statute will disclose that in the execution of this law the county of Stark is subjected to no burden or expense growing out of the exercise of such jurisdiction, nor is the county of Billings benefited except from the contributions from the territorial treasury.

It is further contended by the respondent that the legislature has the right to create taxing districts without regard to pre-existing political subdivisions. This we readily concede; but it does not follow that the act in question should be construed as an exercise of such power, in the absence of any thing to indicate that such was the purpose or intent of such legislation.

Taxing districts are organized and created to subserve the common interest and welfare of the communities embraced within their limits, and not arbitrarily to work inequality, injustice and oppression, and when a law cannot be sustained without referring it to the exercise of power in a particular direction, and for a certain purpose, and such assumption exposes the legislature to the charge of injustice, it were better to relieve it of such imputation and hold the law void. Cooley, Const. Lim. 614 *et seq.*

But if we say that the effect of this law is to create taxing districts embracing the organized and unorganized counties, and can see no possible reason for the creation of such districts, but, on the contrary, can only attribute it to the exercise of an unjust and

arbritrary power, entailing gross injustice and oppression on a portion of the district, we should the rather deny such effect to the law, and decline to sustain it as the exercise of the power to create taxing districts.

It is further insisted, so far as the county tax is concerned, that this act is void because it discriminates in the taxation of different kinds of property, contrary to the provisions of the organic act.

By the organic act two things are required in regard to all taxation : *First*, that there shall be no discrimination in taxing different kinds of property ; *second*, taxation in proportion to value. It is claimed that the act in question violates the first of these requirements. What is meant by discrimination ? Does not discrimination involve some unequal selection of property which is subject to taxation, or some apportionment of the rate or rule by which the different kinds of property are required to bear an unequal or a non-uniform portion of the tax imposed ? By the act under discussion only one kind or class of property is taxed in the unorganized counties; all other kinds, including real estate, are left untaxed. Is not this discrimination within the meaning of the organic act ? If the legislature must tax all property, both real and personal, which is made subject to taxation, under what circumstances can any particular kind be taxed while some other kind is left untaxed ? By what authority can the personal property in unorganized counties be taxed, and the real estate go untaxed ? Will it be said that this law fixes the *situs* of personal property for taxation in the organized counties, and in such counties all property is taxed, and so there is no discrimination ? If so, we reply that while the *situs* of personal property for taxation may be fixed by the legislature either in the county where the owner resides or where the property is kept, we know of no authority for holding that such *situs* may be fixed regardless of this qualification, as would be done in this case ; for this personal property is neither kept in the organized county, nor does the owner reside there, but, *per contra*, both are in the unorganized county.

What is the present case ? The plaintiff was a resident of the unorganized county of Billings, and owned therein both real and personal property at the time of the assessment, levy and collection of the taxes of which complaint is made. This unorganized

county was nearer to Stark county than to any other organized county. The two counties, with others, were in the same subdivision of the sixth judicial district, and, at the time, attached to the county of Morton for judicial purposes.

Now, if it were conceded that these taxes were local so far as Billings county was concerned, and that the effect of the law was to create a taxing district, yet we have remaining the fatal objection that in any aspect of the case it is in conflict with that provision of the organic act which prohibits discrimination in taxation of different kinds of property; for certainly the taxation of personal property and the non-taxation of real estate under similar conditions, when both under the general law have been made the subject of taxation, is obnoxious to this charge.

While we have discussed the several different phases of this question, we are, however, clearly of the opinion that the act in question attempts to levy and collect taxes from the inhabitants of Billings county for purposes not public or local to it, and for this reason the tax is invalid. We have arrived at this conclusion notwithstanding the fact that we recognize and fully appreciate the fact that it is a well and firmly established doctrine that "the power of taxation is a great governmental attribute with which the courts have very wisely shown an extreme unwillingness to interfere." But when this power is abused, or sought to be extended beyond its proper sphere, and under its guise property is taken for private uses, the abuse should share the fate of all other usurpations. Cooley, Const. Lim. chap. 14, pp. 615, 616.

The supreme court of Iowa, in the case of Morford v. Unger, 8 Ia. 92, makes use of the following language, which we deem pertinent to the case at bar, to-wit: "If there be such a flagrant and palpable departure from equality in the burden imposed; if it is imposed for the benefit of others, and for purposes in which those objecting have no interest, and therefore are not bound to contribute,— it is no matter in what form the power is exercised, whether in the unequal levy of the tax, or in the regulation of the boundaries of the local governments, which results in subjecting the party unjustly to local taxes, it must be regarded as coming within the prohibition of the constitution designed to protect private rights against aggression, however made, and

whether under the color of recognized power or not." The above is vigorous language, and, in our opinion, correctly draws the line in reference to the exercise of the power of taxation, and is equally applicable to taxation under our organic act.

It will be observed that up to this time we have not discussed directly the question of the validity of the territorial tax, but from the force of our reasoning *supra* we of necessity reach the conclusion that it is also illegal and void by reason of the fact that the law discriminates in the taxation of different kinds of property in unorganized counties, and therefore in conflict with the organic act on this subject.

In doing this we do not mean to be understood as holding that the general law of taxation must provide for the collection of taxes in unorganized counties in order to render it legal as to the organized counties of the territory. We do not so hold, but, on the contrary, we think it does not affect the general law in regard to taxation. We do not think it is incumbent upon the legislature to provide machinery for the collection of taxes in these sparsely-settled and unorganized communities. The laws of taxation are not made for deserts, wild wastes, and bleak and unsettled prairies, but for organized communities. In other words, the legislature is not bound to set in motion machinery for collecting taxes in unorganized and sparsely-settled communities when in its judgment the expense incident to its collection would be greater than the revenue thus received.

The organization of counties and clothing them with the habiliments of the law is somewhat in the nature of a political question, and largely in the discretion of the legislature, and its exercise will not be interfered with by the courts, unless grossly abused; but when the legislature attempts to reach one of these unorganized counties by setting in motion the machinery of the law for collecting taxes therein, we are of the opinion that it must provide for taxing and collecting the taxes on all kinds of property subject to taxation under the general law, and a failure to do this will operate as a discrimination forbidden by the organic act, and therefore illegal. It seems to us that this conclusion is in harmony not only with the law, but with sound reasoning. If this be not true, what is there to prevent the legislature from doing the same

thing as regards the wealthiest and most populous counties in the territory? We apprehend it will not be contended that it could indirectly or otherwise relieve the real estate of the rich and populous counties of Cass, Yankton, and Minnehaha from taxation, and only tax the personal property therein, by failing to provide machinery for the collection of the real estate tax, while it taxed all of the other counties on both real and personal property. If so, the provision in the organic act against discrimination and in favor of uniformity of taxation is of but little effect.

We have not overlooked the case of Francis v. Railroad Co., 19 Kan. 303, relied on by respondent, decided in 1877 by the supreme court of that state, and which "at first blush," or from a casual reading of it, would seem to sustain the act here in question. That case was an injunction suit brought by the railroad company against the state treasurer to enjoin the collection of a tax levied for state purposes. The railroad company had about one hundred and six miles of its road in four of the unorganized counties of the state on which taxes were levied under a state law, which imposed upon the auditor of the state the duty of levying for state purposes a tax upon any railroad property located outside of the limits of organized counties, which tax should be the same as that levied upon other property, etc.

The constitutionality of this law was questioned under the section of the state constitution which required all laws of a general nature to have a uniform operation throughout the state, and prohibited special legislation when general laws could be made applicable, and also provided that the legislature should provide a uniform and general rate of assessment and taxation. The constitutional question considered by the court was whether the taxation of railroad property only in unorganized counties for state purposes was a non-uniform and unequal rate of assessment and taxation.

It must be observed that the case differs from the one at bar in several particulars: *First*, the Kansas tax was only for state purposes; *second*, it was enforced through state machinery; *third*, the constitution of the state did not expressly prohibit discrimination, as does our organic act.

The opinion of the court is pronounced by an eminent jurist,

Judge BREWER, and concludes in the following language : " The case has been before us for several months, and the subject of repeated consultations and frequent examinations.  The conclusions which we have reached are by no means entirely satisfactory to us.  We hold the section to be constitutional and valid, not because it is clear to us that it is so, but because it is not clear to us that it is not; and the benefit of the doubt must be given to the law.  The question would be different if discrimination was attempted between property in organized counties, or if the constitution did not contain but a single provision, which seems to imply and rest upon the assumption of organized communities." The court also say in this opinion :   " The freedom from taxation of property other than railroad property in the unorganized counties under the act of 1876 arises in the same manner as the freedom of all property in such counties under prior statutes, and that is, through the failure to provide machinery for reaching it.  The question, therefore, is whether the failure to provide machinery for collecting taxes on all the property in the unorganized counties renders unconstitutional the means employed to collect taxes on a portion of said property, and invalidates the tax attempted to be collected by such means."

The court admits the question is difficult, and that an answer either way is hardly reconcilable with common justice, or the history of the state's system of taxation.  We entertain a high respect for the court which sustained this legislation of Kansas, and especially for the eminent judge who rendered the opinion ; but the reasoning of the court is not clear or satisfactory to us, and we are not prepared to yield assent to the conclusions reached.

If the failure on the part of the state to provide machinery for reaching one class of taxable property within its limits, while other classes are taxed, cannot be criticised by the courts, what is there to prevent a state from doing in this way indirectly, though effectually, what we apprehend will be universally conceded it cannot do directly?  If failure to provide machinery for taxing one kind of property, while ample machinery is given by which to tax another kind, is constitutional, any omission to impose upon officials the duty of taxing all property uniformly and without discrimination would be unassailable in the courts.

We venture this criticism of this opinion with less hesitancy than we otherwise would, had not the learned court itself expressed its own want of satisfaction in the conclusions reached. It seems to us that the honorable and learned court permitted itself to be jostled from the legal highway by reason of the dire and serious consequences which seemed to crowd around the decision adverse to this law, and which they seemed to apprehend would likely interfere with the entire system of taxation in the state.

In the case at bar, however, the system of taxation of the territory is not involved, but the law under discussion is, in our opinion, in conflict with the organic act of the territory which forbids *in hæc verba* discrimination. Ample machinery existed for the taxation of real as well as personal property, but was authorized under this act to leave the real property untaxed while taxing the other.

It is proper to say that the judgment of this court only reverses this case as to the local tax on the ground that it is taking private property for private uses, but holds the territorial tax to be valid, for the reason that they regard it as levied for a public purpose, and not a discrimination within the meaning of the organic act.

Hence what we have said in regard to territorial tax, the reasoning of which holds said tax invalid, is in the nature of a dissenting opinion on our part. The case is reversed. All the justices concurring.

TRIPP, C. J. I concur in so much of the foregoing opinion as declares the tax for local purposes invalid, but I cannot yield assent to the reasoning or conclusion arrived at by the learned judge, whereby he holds the territorial tax as contravening the provisions of our organic act, which prohibits "any discrimination in taxing different kinds of property." The language of the section is: "In addition to the restrictions upon the legislative power of the territories, contained in the preceding chapter (§ 1851), the legislative assemblies of Colorado, Dakota and Wyoming, shall not pass any law impairing the rights of private property, nor make any discrimination in taxing different kinds of property; but all property subject to taxation shall be taxed in proportion to its value." § 1925, R. S. U. S. This provision is unlike any thing to be

found in the constitution of any of the states. It is first found in the organic act of Colorado, enacted February 28, 1861, and carried into our organic act, March 2, 1861, and was subsequently included in the Wyoming act, July 25, 1868. It is not found in the organic act of any of the other territories.

As early as 1787, the Confederate congress, in establishing a government for the North-western Territory, provided that "no tax shall be imposed upon the property of the United States," and in no case shall non-resident proprietors be taxed higher than resident. This provision was carried into the organic law of Missouri Territory (§ 6), in 1812, and the organic law of several of the older territories. In 1838, in enacting the Wisconsin organic law, which seems to have been the model for subsequent territories, this section was changed so as to read: "No tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents." Wisconsin Organic Act, § 6. And this section, which enlarged the prohibition forbidding lands of non-residents to be taxed higher than those of residents, so as to make it include all property of non-residents, was re-enacted *verbatim* in nearly all the territories subsequently organized. In the Iowa organic act, June 12, 1838; Minnesota, March 3, 1849; Utah, September 9, 1850; Kansas and Nebraska, 1854; Dakota and Colorado, 1861; and by R. S. U. S., § 1851, it is made a part of the organic law of all the territories. This was the only provision of the organic laws of the older territories in relation to taxation; and outside of the territories of Dakota and Wyoming it is the only provision limiting legislation as to taxation, except in the Territory of Washington, which contains the clause: "And all taxes shall be equal and uniform, and no distinctions shall be made in the assessments between different kinds of property, but the assessments shall be according to the value of the property" (§ 1924, R. S. U. S.) — which clause is included with a great number of other restrictions contained in that section upon legislation as to currency, etc., and which provision bears striking resemblance to the constitution of many of the states, and resembles our statute only in that part as to assessment of taxes. No reason is given by congress, in its debates or

otherwise, why this provision of our organic law, found in section 1925, as to " discrimination in taxing different kinds of property," should be made applicable to the three territories of Colorado, Dakota and Wyoming alone. Nor does it appear from whence the language or wording of this section was derived. It is quite unlike the language used in any of the constitutions of the states, and was not carried into the constitution of Colorado when she entered the Union as a state. In her state constitution she adopted the provision found substantially in a number of the modern constitutions where limitation has been sought to be placed upon the power of the legislature over taxation. The provision of her constitution is as follows : " All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," etc. Article 10, § 3, Const. Colo. Nor does there appear to have ever been any construction of this section by Colorado or Wyoming, and this is the first time to our knowledge that it has been before the courts of this territory. The language is not unlike that used by the judges in determining the effect of those provisions of modern constitutions relating to uniformity and equality of taxation.

What is meant by the clause prohibiting a " discrimination in taxing the different kinds of property." Does it mean, as claimed for it by the learned judge in the foregoing opinion, such a uniform system of taxation as that when any property within the taxing district is made subject to taxation all other property within the district must be equally so subject ? Let us examine the section. It does not in terms require either a uniform rule or rate of taxation ; it prohibits a discrimination. This word cannot have a literal rendering. All laws are open to the objection of discrimination, and sometimes even of unjust discrimination. Laws providing for levy and collection of taxes discriminate when property by intention or mistake escapes taxation. So, also, in case of local assessment for sidewalks and municipal improvements ; license taxes upon business; taxes upon dogs ; errors in valuation, whereby property in one locality is assessed at a higher price or at a higher rate than in another, where personal property tax is made a lien upon real property ; and some of them, perhaps, are an unjust discrimination, yet no one seems to think they avoid the taxes

collected under such laws, or that the statute is open to the constitutional objection here raised. Taxation of property always requires the exercise of judgment and of a careful discrimination. Taxation of the different kinds of property without discrimination, (using the word in its popular sense), would lead to the very error, and produce the very mischief, congress has sought by this provision to prevent.

Discrimination cannot mean uniformity of taxation, for laws establishing a uniform rate or rule may unjustly discriminate in favor of or against other property of the same class. A law which taxes all farms at the same price, which fixes the value of every acre of land, every horse, every cow, and every article of each class of personal property at the same sum for purposes of taxation, would be uniform; but who would not say at once that such a system was an unjust discrimination; yet, to correct such a wrong, the injured party must seek his redress from the legislature, and not from the courts. Says Judge COOLEY, in Youngblood v. Sexton, 32 Mich. 406, where it was objected that similar taxation was not uniform: " The objection to a want of uniformity is wholly misplaced here. Uniformity is the very basis of this tax. It is levied entirely without discrimination; and the real objection to it is, not that it lacks uniformity, but that the legislature were unjust in making it uniform, instead of levying it by some standard of discrimination. The objection presents a case of misapplication of terms. It is also presented to the wrong tribunal."

To avoid such a uniformity congress has prohibited discrimination, which must be construed to mean unjust discrimination; a discrimination in favor of one kind of property as against another; a discrimination which prevents each kind of property subject to taxation from bearing its fair and equal share of the burden imposed upon all. In this sense the words are aptly chosen; in any other they are meaningless, and lead to absurd results. Under this construction we are free from many of the perplexities in which courts have found themselves in determining whether laws which were not discriminating were uniform. The disjunctive clause with which this provision is connected further limits and explains it; standing alone it might be construed to mean that all property of every kind must be taxed equally, without discrimina-

tion; but the words "subject to taxation," limiting the words and clause of which they form a part, extend their limiting power to the principal clause, which the disjunctive clause itself limits, so that the meaning of both, construed together, is that there shall be no unjust discrimination in the taxation of the different kinds of property subject to taxation, but all such property shall be taxed in proportion to its value. These words, "subject to taxation," are of importance in the construction of this section; without them, all property would be subject to taxation; with them, only certain property is liable to taxation.

Who is to determine what property is "subject to taxation?" The courts cannot determine. It is a legislative function. It can only be exercised by the legislature or by congress. Congress has not seen fit to exercise it, but has given to the legislature the absolute control over "all rightful subjects of legislation," saving and reserving to itself alone the right to modify or annul the same. This certainly is a rightful subject of legislation, and it follows that congress has given to the legislature the right to apportion and subject property to taxation.

The legislature, then, has a right to say what property shall be subject, and what shall not be "subject to taxation;" what property shall be taxed, and what property shall be exempt from taxation — limited only by the provision that all property so subject to taxation shall be taxed without unjust "discrimination" in favor of one kind of property as against another, so that every kind of such property shall be taxed in proportion to its value.

Without the limitations contained in sections 1851 and 1925, R. S. U. S., under the general legislative power granted this territory, the legislature would have absolute control of the subject of taxation. It could arbitrarily say what property should bear the burdens of taxation, and what should escape. It could, perhaps, unjustly discriminate in favor of the rich as against the poor, and in favor of one class of property as against another, irrespective of the public good or the future benefit to be derived therefrom, except in so far as it would be restrained by the provision of the federal constitution itself. Great powers were given legislatures under the earlier constitutions of the states, and in some those powers are still retained; but the people have grown restless

under taxation laws which favor the few as against the many, and unjustly discriminate in favor of one class as against another, and have sought to remove from the influence of the lobby and the trade of legislation the right to exempt property from its proper share of the public burden. In many of the states all property is subject to taxation except as exempted in the constitution itself. This is the case in Ohio, Indiana, Minnesota, Virginia, West Virginia, North Carolina, South Carolina, Tennessee, California, Nevada, Colorado and Florida. In some the people have contented themselves with providing in their constitutions that " taxation shall be equal and uniform throughout the state," as in New Jersey, Pennsylvania, Michigan, Wisconsin, Kansas, Missouri, Arkansas, Texas, Oregon, Georgia and Louisiana; while in others, of the older states, the legislature is still unrestricted in its power over the question of taxation. Our organic law is more like the constitutions of those states wherein the legislature is not restricted as to exemptions, except in so far as that taxation must be equal and uniform. Since congress has not attempted to designate what property shall be subject to, nor what shall be exempt from, taxation, we shall be little benefited by the examination of the decisions of those states whose constitutions enumerate the classes of property which are exempt. Nor are we fettered by the rule of uniformity which has led to such learned and protracted discussions by the courts in sustaining laws admittedly wise and without unjust discrimination, but which seemed obnoxious to the objection that they were not uniform. As we have seen, laws which are uniform may unjustly discriminate, and the converse is equally true, that laws which do not unjustly discriminate may not be uniform.

Is this law open to the objection that it unjustly discriminates in taxing different kinds of property? The act was approved March 12, 1885, and is made an amendment of section 17 of the Revised Law of 1877, amending that section to read as therein provided. It consists of three sections, the first of which provides: " All personal property is to be listed, assessed and taxed in the county where said property may be situated and kept on the 1st day of April of the then current year." * * * Section 2 provides: " When any personal property is situated and

kept in any unorganized county of this territory, then such property shall be subject to taxation in the nearest organized county thereto, and shall be listed and assessed by the assessor of said nearest organized county; and when said unorganized county borders upon two or more organized counties, then said property shall be assessed and taxed in that organized county having the greatest extent of contiguous boundary line." And the third section provides a penalty for violation of the requirements of the act. Section 17, before amendment, read as follows: "All personal property is to be listed, assessed and taxed in the county where the owner resides on the 1st day of January of the then current year, or where the property is kept. But if the owner resides out of the territory, it is to be listed and taxed where it may be at the time of listing." One of the changes sought to be made by this new statute was to fix the *situs* of personal property for taxation. As the law existed prior to 1885, personal property could be taxed either where the owner resided, where he was when it was listed, if a non-resident, or where the property was kept. Under the law of 1885, the *situs* of all personal property is where it is situated or kept. This change relieved from taxation a large class of personal property, which had prior thereto been taxed to residents of the organized counties, and to non-residents where listed. To obviate this objection, and not to release property already subject to taxation, as well as to make the large herds of cattle kept in the unorganized counties bear and continue to bear their fair share of the expenses of government, section 2 of the act was made to provide a means of collecting such tax. No complaint had ever been made of the workings of the law of 1877, which substantially had been the law long prior thereto. No citizen of the organized counties, or other person owning stock or other personal property in the wild country west, divided by imaginary lines into what are termed "unorganized counties," had ever complained of paying not only territorial, but local, taxes upon the property so owned by him. But under the amendment a new class of tax payers was reached; not only the personal property of persons residing without the unorganized counties, but that of persons residing within the unorganized counties, is subjected to taxation; and it is one of these individuals that is the complainant here; and his com-

plaint is not that he is taxed too much, but that he is not taxed enough; that when the government taxed his personal property it should also have taxed his real property. It is, to say the least, a remarkable case of unjust discrimination.

Is the law, then, which reaches out and seeks to tax the personal property within the unorganized counties, open to the objection that it is unjust " discrimination in taxing different kinds of property ? " The court cannot shut its eyes to the fact known to all that the western prairies are a vast cattle range, covered with thousands of cattle of great value, whose owners ought in good right to bear a fair share of the burdens of taxation, necessary in the enactment and enforcement of the laws to which they look for the protection of their property. Is it an unjust discrimination to make all the cattle on a given range subject to taxation under the law of 1885, rather than a select number, as under the law of 1877 ? All tax laws are necessarily harsh and arbitrary ; there can under no system of government be an entire freedom from unjust discrimination, but the entire scope and result of a system of taxation must be considered, rather than a literal and exact rendering and construction of a word or phrase of the statute providing it.

I think this law is not open to the charge of an unjust discrimination, and that it may be sustained upon either of two grounds : (1) That it was a providing of the machinery for collecting taxes on property subject to taxation; (2) an allowable exemption of real property within the unorganized counties.

The law of 1877 provided for seventeen distinct exemptions of property, and provided that all other property should be subject to taxation, and this, with a few modifications, has been the law since 1862,— more than a quarter of a century. Congress has had before it the laws of each session of our legislature containing these provisions, and the amendments made thereto from time to time, and it has neither disapproved nor modified them. They have therefore, within the rule laid down by the supreme court of the United States, received the implied sanction of congress. Clinton v. Englebrecht, 13 Wall. 434.

No one during all these years has ever questioned the constitutionality of the law allowing these exemptions, though various

questions of taxation have been heard and determined in the lower courts, some of which have been carried to the supreme court of the United States; yet it has been tacitly admitted during all these years, notwithstanding all the diligent research of counsel in preparation of cases raising various questions as to the validity of our statutes on taxation, that the exemption of enumerated property to each citizen; of all the property of certain infirm and indigent; of all property of charitable and benevolent institutions, and of lands whereon are grown trees, and are placed other improvements of benefit to the people at large, — was not an unjust "discrimination in the taxing of different kinds of property." It is true that no length of time except by limitation of law, and no mere submission to or failure to question a statute, are proof to a court of its invalidity; but the circumstances connected with the execution of a law whose validity is attacked long subsequent to its enactment may be taken into consideration by the court upon the theory that if so glaring a constitutional defect existed, as is here now claimed for the first time, some of these legal gentlemen in the examination of kindred questions, or the courts in determining the same, would probably have suggested its existence. If it is a discrimination to tax the personal property within the unorganized counties, and leave untaxed the real property, it was a discrimination to tax a portion of the personal property, and to leave the balance untaxed under the law of 1877; or, if that can be excused on the ground that the *situs* of the property was made to follow the owner, it was certainly a discrimination to tax the man who lived in the organized county to the full limit of the law, and to omit to tax his wealthier neighbor who happened to live just across the line in an unorganized county.

If it is conceded that the failure to provide machinery for the collection of any tax within the unorganized counties can excuse such apparent discrimination as the learned judge in the principal opinion seems to admit, I cannot understand by what logic the providing of the machinery to collect a part of it is a discrimination, or how a man can be heard to complain in a court that he is unjustly discriminated against, when he has paid taxes on his cattle, in that he has not been required to pay taxes on his farm. It was a part of the code of morals sought to be established by our

Saviour that if they smite you on one cheek, you must turn the other also; but the rule has never so far before found its way into the legislation of our country as to be attempted to be enforced by the courts. It occurs to me that if the legislature has permitted property to go untaxed in the unorganized counties, and thereby the burden has been increased upon those in the organized counties, and thereby it has unjustly discriminated against certain kinds of property and in favor of others, when it takes one step in the direction of lifting that burden by taxing personal property it is not a step toward discrimination. If so, when it advances the other step, and taxes all property in the unorganized counties, discrimination would be complete. And if it was not a discrimination to fail to collect any tax on any property in the unorganized territory, I cannot see how it is a discrimination to fail to collect it on a part. Certainly the greater is presumed to include the less, and if it was not unjust to allow the whole to escape taxation, I cannot see how it is unjust to allow the part. But it is said that when you commence taxing in a district you must tax every thing subject to taxation; that when any tax is levied in an unorganized county, you must levy it upon all property. There are no taxing districts for the territorial tax; its district is the entire territory, and the machinery by which this tax is collected is found in the local organization of the counties. If this position be correct, that it is only necessary to neglect to tax all property in a given district to make the taxation valid, then the territorial tax could be abated in any organized county, so that it is abated on all property. This cannot be true. It would be an unjust discrimination, an arbitrary and illegal exemption. The failing to provide machinery to collect the territorial tax in unorganized counties can only be excused upon some good ground presumed to exist. The presumption is in favor of the law; and it will be presumed that the legislature is advancing the machinery for collection of taxes upon property in the outlying territory as fast as it will pay to do so. It would be bad legislation to provide for the assessment of a tax yielding $1,000, which would cost $2,000 in its collection. Such legislation and such taxation would be an unjust discrimination against those required to pay the extra and unnecessary expense.

The cost of collecting taxes upon real property is slower and much more expensive than that upon personal property, which can be removed and exposed for sale by distress. Besides, there is little real property in the unorganized counties to which the settlers have acquired title; and it is presumed that when in the judgment of the legislature, the ends of justice will be best subserved with least discrimination against the property-owners and tax payers by providing for collection of taxes upon the real property of unorganized counties, it will be done. This court will be justified in setting aside the laws of the legislature only when it can plainly see, under any view that can be taken of the law, that it is clearly in violation of the organic act. If we were in doubt even of the validity of the act, such doubt must be resolved in favor of the law; *a fortiori*, when the court is unable to see how any class of citizens, or any class of property has been unjustly discriminated against by this act, it will not go into the realms of speculation for some possible organic defect. Were the case one of uniformity as to the rule of taxation, as in Wisconsin, or the rate of taxation, as in Kansas, under their constitutions, we might well pause, and in the language of the learned judge who delivered the opinion of the court in Railroad Co. v. Taylor, 52 Wis. 42, 8 N. W. Rep. 833, say : " It is well to move slowly, and, if possible, with fixed sandals, and upon no slippery pathway." Yet that learned court held in the case just cited, under a constitution providing that " the rule of taxation shall be uniform throughout the state," that the legislature had the power to exempt the plaintiff railway for a term of years from all taxation; and in Kansas, under a constitution that provides that " the legislature shall provide for a uniform and equal rate of assessment and taxation," her court held valid a statute which provided that real property only of that part of the town set off and annexed to another town should be liable for its proportion of the debt of the old town from which it was severed. Commissioners v. Nelson, 19 Kan. 234. The party whose real property had been assessed for a tax to pay this debt, complained that such a law was not uniform and equal under the constitution ; that owners of personal property should be also taxed for this purpose. It would seem difficult to sustain such legislation

under such a constitutional provision ; and the court, admitting the difficulty of its position, says : "To say that all assessments and all taxes must be equal and uniform in order to be valid ; that the tax in this case is not equal and uniform, and therefore that the tax in this case is void — is an argument so short, so simple, so logical, and so easy of comprehension, that all persons who cannot or will not push their inquiries into a broader field of investigation, will gladly accept it as true and think it conclusive." And the court then proceeds to argue that the words of the constitution cannot have a literal construction ; that there underlies all such instruments a principle which the court in its interpretation is bound to respect ; and then continues to show the lack of unjust discrimination in the act, and that it is within the spirit and meaning of the constitution. We are met with no such obstacles here. Our organic law does not require the law of taxation to be uniform either in rule or rate. It embodies the very principle invoked by these learned courts as concealed in or lying back of the wording of their organic laws. In my judgment, the failure of the legislature to provide the machinery for collection of the tax on real property within the unorganized counties did not invalidate the tax collected for territorial purposes on personal property.

Again, if this legislation is to be interpreted as an exemption of the real property within the unorganized counties, I have no doubt of the constitutionality of such legislation. When it is once admitted that the legislature has power to exempt property from taxation, the most difficult obstacle has been overcome. The only limitation upon such power of exemption is that it shall not work an unjust discrimination as against other property. Why, under such an interpretation of the statute, might not the legislature have exempted all the real property in the unorganized counties in terms, so long as they remain unorganized ? There is no local government to maintain, no discrimination is made except as against the territory and the tax payers of the organized counties ; and if it appear that in the present or near future the entire territory may be benefited by such a provision of taxation, then no discrimination is made as against them. Such exemptions are presumed to be for the public benefit. The United States, upon

this theory, not only offers her homesteads free to the settler, but exempts them from all debts contracted by him prior to issue of patent. The settler who pushes out over the frontier line into the unsettled country is generally poor, and the inducement offered him of free lands, coupled with exemption from taxation during the period of early settlement, might benefit the entire territory by hastening an early opening and development of the unorganized county, which, but for such inducement extended, might long remain unoccupied, and might fail to bring into the treasury any revenue from taxation for a much greater length of time. Such laws are continuously sustained by the courts. Exemptions of property for manufacturing purposes have always been sustained wherever the legislature has the power to exempt; the presumption being that they contribute to the general public benefit. Factory Co. v. Inhabitants of Gardiner, 5 Me. 133; St. Joseph v. Railroad Co., 39 Mo. 476; Brewster v. Hough, 10 N. H. 138; Tomlinson v. Jessup, 15 Wall. 454; Hospital v. Philadelphia Co., 24 Pa. St. 229.

In general, the exemption must be of a class, and not of an individual of a class; and under every statute there must be some good reason for the exemption, otherwise the legislation will be open to the objection of unjust discrimination; any arbitrary and invidious exemption of a person or class will be void. No good reason appears to me, if the legislature intended by this act to exempt all real property from taxation in the unorganized counties for the public benefit, such as the encouraging of emigration, why the law is not as valid a one as that exempting a class of manufacturers engaged in a certain line of work from exemption for a term of years. It is in some respects less objectionable in that no period of time is fixed for the expiration of the exemption, and the benefit is one more general to the entire people than in case of the manufacturer. The right to exempt such persons and corporations in states where the right of exemption is not restricted, is so general a one that it long ago ceased to be challenged, and the supreme court of the United States, and certain of the supreme courts of the states, have carried the doctrine so far as to hold that in case of charters and franchises accepted with such exemption, without right of revocation by the state, it be-

comes a contract which binds future legislatures. Says Judge BRADLEY in Salt Co. v. East Saginaw, 13 Wall. 376: "It is unnecessary at this time to discuss the question of power on the part of a state legislature to make a contract exempting certain property from taxation. Such a power has been frequently asserted and sustained by the decisions of this court." Citing New Jersey v. Wilson, 7 Cranch, 164; Gordon v. Appeal Court, 3 How. 133; Bank v. Knoop, 16 id. 369; Dodge v. Woolsey, 18 id. 331; McGee v. Mathis, 4 Wall. 143, and others.

This doctrine has, however, been denied by many of the states, and it has been vigorously maintained that no legislature has the right to tie up and bind future legislatures as to the revenue of the state. As late as 1878 the legislative assembly of the District of Columbia passed an act exempting from taxation, for ten years, such real and personal property as might be actually employed within the district for manufacturing purposes. Under subsequent legislation by congress all real estate in said District was made liable to taxation, except property of the United States, the District of Columbia, and that used for educational and charitable purposes; and it was claimed by Welch, a manufacturer who had made large investments under the former law, that it was a contract which subsequent legislation could not impair. The question was also raised as to the power of the District legislature to pass such an act. Justice HUNT, in delivering the opinion of the court, says: "It is not open to reasonable doubt that congress had power to invest, and did invest, the District government with legislative authority, or that the act of the legislative assembly of June 26, 1873, was within that authority. We shall therefore consider the question as if that act exempting manufacturing property from taxation had been passed directly by congress. It does not create a contract in the sense that it cannot be repealed. It has been frequently held that the incorporation of a company by special charter, with the exemption of its lands or other property from taxation, creates, upon the acceptance of the charter, a contract which will insure that exemption during the period specified. But the present case does not come within the rule. This is a bounty law, which is good as long as it remains unrepealed; but there is no pledge that it shall not be repealed at any time."

Welch v. Cook, 97 U. S. 542. If it is conceded that the legislature may exempt forty acres or a quarter section of land from taxation, which has grown thereon a certain number of trees, no reason appears why it may not exempt wild land in the unorganized counties for a limited time to the settler who takes it up and makes improvements thereon.

Nor is the legislation open to the objection that it is local or special. It is not local because it applies to the unorganized counties, and not to the whole territory in name. It does apply to the whole territory in that the proposition is open to the people of the whole territory who desire to avail themselves of its provisions, and the benefit to be derived from the early settlement of the new country is to be shared in by the whole territory. The same objection could be urged to mills and manufactories, which must be confined to rivers and streams of water, or to exemption of agricultural lands for planting timber. because it does not apply to cities and incorporated towns.

The term "unorganized counties" is not one of place or location; it is one of class. What is unorganized to-day may be organized to-morrow, and counties and portions of counties now organized may again become unorganized. The law regards the future, not the present alone, nor the past. Legislation based upon the population of cities and towns, when prospective in operation, is always held not to be special or local; and why should this legislation based upon organization, which rests largely upon population, be any more open to such objection? By local or special is meant local or special in its effect or operation.

In either view of the case, the law, so far as it provides for the collecting of a territorial tax assessed upon personal property in the unorganized counties, is valid, and must be sustained; but in so far as it seeks to provide for local taxation to be expended for the sole benefit of a county foreign to that wherein the property is situated, it is illegal and void. The cause must be remanded for further proceedings in accordance with the opinion of this court. All the justices concur, except Justice THOMAS, who dissents.