Groesbeck, C. J.
This cause was submitted to the trial court on an agreed statement of facts. The Frontier Land & Cattle Company, during the year 1889, was . a domestic corporation, having "been organized and then existing under the laws of Wyoming territory. It was engaged in the business of stock raising, and had a range for its live stock in the county of Fremont, where its home ranch was situate. Its principal office and place of business was at Cheyenne, in Laramie county. This corporation brought in by rail in the latter part of May, 1889;between 2,000 and. 2,200 head of its cattle, unloading them at Uva, Laramie county, from whence they were driven leisurely to the range of the corporation in Fremont county, arriving there on or about the 1st day of July, 1889. The cattle were in no county of the territory of Wyoming, except while in transit to Fremont county, and were assessed for taxation in that county only. They were of the class valued for the purposes of taxation for that year by the territorial board of equalization at $11 per head. On July 22,1889, the assessor of Fremont county requested the plaintiff in error to list and return to him the said cattle for assessment in his county for that year, accompanying that request with blank assessment lists. This the corporation refused to do, and thereupon the assessor assessed the cattle upon the best information obtainable by him as to the situation and number thereof, and placed the same upon the county assessment roll, where is and was placed the assessment of property made after the completion of the annual assessment for the county. This assessment was made after the completion of the regular annual county assessment for the year 1889, and prior to the final adjournment of the second and last meeting of the board of county commissioners of the county, sitting as a board of equalization forthe county; such board finally adjourning at its said second meeting on the 27th day of July, 1889, but examining and considering the assessment of these cattle to the plaintiff in error before such adjournment. Theboard made nochange or alteration as to the number or value of the cattle, and notice was at once given of the action of the assessor and the board of equalization as to such assessment and proceedings to the plaintiff in error, but no record was made by the board, showing such examination and consideration of the assessment by the members thereof, and said corporation assessed was not present nor represented before the board at any time during its said second and final meeting, and did not have time to appear or be represented thereat. The plaintiff in error paid to Fremont county the sum of $1,389.10, the taxes upon all of its other property for the year 1889. The taxes levied and assessed against these cattle brought into the territory were $515.70, which was the regular rate of taxation on such property for the current year, authorized by law. The plaintiff in error refused to pay these taxes last mentioned, and sought to have the collection of the same perpetually enjoined. The district court for Fremont county gave judgment for the amount of the taxes against the plaintiff in error, and it brings error here.
This suit was brought, and the facts detailed in the agreed statement occurred, before the admission of the state into the Union, and hence the various provisions of the constitution of the state relative to taxation do not apply. The law governing the case is found in the acts of congress concerning the territories, or the territory of Wyoming in particular, and in the legislation of the territory on the subject. The restrictions on the taxing power of the legislative assembly of the territory are found in the following congressional enactments in the Revised Statutes of theUnited States: “The legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States. But no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of nonresidents be taxed higher than the lands *767 or other property oí residente.” Rev. St. § 1861. “In addition to the restrictions upon legislative powers of the territories contained in the preceding chapter, section eighteen hundred and fifty-one, the legislative assemblies of Colorado, Dakota, and Wyoming shall not pass any law impairing the rights of private property, nor make any discrimination in taxing different kinds of property; but all property subject to taxation shall be taxed in proportion to its value.” Id. § 1925. The cattleof the plaintiff in error,broughtinto the territory the latter part of May, and being in Fremont county on or about the 1st day of July, 1889, were assessed and taxed, it is contended, under the authority conferred by either or both of the following sections of the Revised Statutes of Wyoming. Section 3843: “Any live stock that may be driven into any county of this territory for the purpose of grazing therein, at any time previous to the thirty-first day of December in any year, shall be subject to assessmentfor all taxes levia-ble in said county for the year then past, in the same manner and to the same extent as though said stock had been in the county at the time of the annual assessment; and it shall be the duty of the proper officers to assess the same at any time after the time of the annual assessment; and said taxes shall become due and becol-lected at the same time and in the same manner as the annual levy; and, if assessed after such annual levy is payable, they shall become due and be collected as soon as assessed, and, if not paid, shall then become delinquent, and be treated in the same manner as other delinquent taxes: provided, that, if such stock shall be assessed and taxed at the next annual assessment, and such tax shall be collected, the county commissioners shall remit a just proportion, according to the portion of the calendar year for which said stock remained in the territory of the tax first above provided for in this section.” Séss. Laws, 1882, c. 91, § 1. Section 3845: “Any personal property brought, driven, or coming into this territory at any time prior to the last day of each year, and which shall remain in the territory for a period of not less than thirty days, shall be subject to and shall be assessed for all taxes leviable in the county in which the same shall thus be found for that year, in the same manner and to the same extent as though said property had been in the county at the time of the annual assessment: provided, that such property has not been regularly assessed in some other county of the territory for that year; and it shall be the duty of the proper officers to assess the same at any time after the time of the annual assessment, and said taxes shall become due and payable, and shall be collected, at the same time and in the same manner as the annual taxes levied in such county; and, if assessed after such annual taxes are payable, they shall become due and payable as soon as assessed and levied, and, if not paid on demand, shall then become delinquent, and shall be treated and collected in the same manner as other delinquent taxes: provided, that, if said property shall have been in the territory before such assessment for any time more than thirty days and less than six months, then there shall be levied against the same buta half year’s tax, the same to be computed at one half of the tax levied against other like property for the current year; and to this end the assessor assessing the same shall, in his assessment, return and show the length ol time said property has been in the territory: and provided, further, that nothing herein contained shall be construed into an authority to assess or levy a tax by additional assessment and levy upon any merchant or dealer within the territory on goods, wares, or merchandise brought into the country to replenish the stock of such merchant or dealer, and keep it up to the amount at which it was originally assessed, and who has already been assessed on his stock for the current year.”' Sees. Laws, 1884, c. 93, § 3.
These sections cannot be construed so-that they may stand together. The first in order (3843) applies only to live stock driven into any county, for the purpose of grazing therein, at any time previous to the last day of December in any year, while the second (3845) applies to all personal property brought or driven into the territory during such period, except the goods, wares, and merchandise of a merchant brought in to replenish his stock. The use of the words “driven into," in this last section (3845) can only refer to live stock, even if the terms “any personal property ” did not include it. Section 3843 provides that, if the live stock mentioned is assessed for taxation the following year, the county commissioners shall remit a just proportion of the tax for the first year, according to the portion of the calendar year the stock remained in the ter *769 ritory; while section 3845 provides that if the property remains in the territory for more than 30 days and less than 6 months before the time of the assessment, there shall be levied against it but one half of the tax for the current year. Both of the sections have reference undoubtedly to property brought or driven in after the time of the regular annual assessment. Section 3843 is open to the objection that it makes a discrimination against live stock brought or driven into the jurisdiction after the annual assessment, as there was no provision forthe taxation of other personal property brought in after that period had expired. This discrimination was held to be unconstitutional in the cases of Graham v. Commissioners, 31 Kan. 473, 2 Pac. Rep. 549, and Board v. Wilson, 15 Colo. 90, 24 Pac. Rep. 563.
We are relieved from deciding whether the constitutional provisions of these states are tantamount to the restriction on taxation contained in section 1925 of the Revised Statutes of the Dnited States, quoted supra, as we are compelled to hold that the latter section (3845) supplants the former section (3843) and must govern. These two statutes were originally enacted at different periods of time; the former (3843) in 1882, and the latter (3845) in 1884; but both are incorporated in our Revision of 1887 in precisely the same language as in the original acts. The one later enacted and later in order (3845) legislates directly on the same subjects as the earlier statute (3843.) It provides a different measure of payment, and one much more in favor of the taxpayer. We have the right to and must ascertain the times when these statutes took effect, and, as they cannot be reconciled,follow the one which is the latest declaration of the legislative will, and which must prevail. Suth. St. Const. § 161, and cases there cited. The original statute of 1884,containing section 3845, and the immediately following sections of the Revision, repealed all ineon sistent legislation. Section 3843 was inconsistent with it, and has no rightful place in the Revision. It is a snare to the assessing officers, who are usually men not bred to the law, and not usually able to decide questions of statutory construction. We are therefore limited in this inquiry to the consideration of the provisions of section 3845. One objection to the proviso to that section is that it operates in favor of merchants and dealers in goods, wares, and merchandise, and is consequently an unlawful discrimination “irs> taxing different kinds of property, "forbidden in section 1925, Rev. St. U. S. The discrimination referred to in'this section has= been held to mean an unjust discrimination, — such a discrimination in favor of one kind of property as against another as prevents each kind of property from bearing its fair and equal share of the burden imposed upon all; and that in such sense the words are aptly chosen ; in any other, that they are meaningless, and lead to absurd results. Farris v. Vannier, 6 Dak. 186, 203, 42 N. W. Rep. 31. It is further said in the majority opinion on this point, by Mr. Justice Tkipp: “Under this construction, we are free from many of the perplexities in which courts have found themselves in determining whether laws which' were not discriminating were uniform. The disjunctive clause with which this provision is connected further limits and explains it. Standing alone, it might be construed to mean that all property of every kind must be taxed equally, without discrimination; but the words ‘subject to taxation,’ limiting the words and clause .of which they form a part, extend their-limiting power to the principal clause* which the disjunctive clause itself limits, so that the meaning of both, construed together, is that there shall be no unjust discrimination in the taxation of different kinds of property subject to taxation, but all such property-shall be taxed in proportion to its value. These words‘subject to taxation ’ are of importance in the construction of this section. Without them, all property would be subject to taxation ; with them, only certain property is liable to taxation. Who is to determine what property is ‘subject to taxation?’ The courts cannot determine. It is a legislative function. It can only be exercised by the legislature or by congress. Congress, has not seen fit to exercise it, hut hasgiveni to the legislature the absolute control over‘all rightful subjects of legislation," saving and reserving to itself alone the-right to modify or annul the same. This-certainly is a rightful subject of legislation, and it follows that congress has* given to the legislature the right to apportion and subject property to taxation. The legislature, then, has a right to say what property shall be subject and what, shall not be‘subject to taxation;’ what property shall be taxed and what property shall be exempt from taxation, — limited, only by the provision that all prop *771 erty so subject to taxation shall be taxed without unjust ‘ discrimination ’ in favor of one kind of property as against another, so that every kind of such property shall be taxed in proportion to its value.” In this case just cited the acts of congress limiting the power of taxation in the territories are elaborately reviewed, and the difference between this congressional restriction as to taxing different kinds of property which applied only to the territories of Colorado, Dakota, and Wyoming, and the congressional provisions requiring uniformity of taxation common to the other territories, is clearly pointed out.
Does this proviso to section 3845 of our Revision unjustly discriminate in favor of •one kind of property as against another? The exception in favor of merchants and dealers was doubtless intended to keep in force the provisions of section 3793, Rev. St. Wyo., (section 20, c. 109, Comp. Laws 1876,) prescribing a rule of valuation on the stock in trade of merchants, which is to be listed for taxation on the average value of such property during the year next previous to the time of listing for taxation, or if the merchant has not been in business so long, the average value of such property during such time as he may have been engaged in business, or, if his business began with the assessment period, the value of the property at the time of listing. The exception in the proviso runs only to the goods, wares, and mer•chandise of the merchant brought in to replenish his stock and keep it up to the •amount at which it was assessed originally, and not to goods brought in to increase his stock in trade. It is doubtful if this is any discrimination, either justor unjust, in favor of the merchant. It is certainly just and equitable to tax the mer-■ehant on the. average value of his stock for the year preceding the assessment. ■His stock may be larger or smaller than usual at the time of listing, owing to the .fluctuations of trade, and the assessment thereof is confined to the capital employed ifn the business during the year, and not to the specific property on hand at the time of assessment. This salutary rule was not disturbed by section 3845. It is Insisted that the stock grower should ¿have the same privilege of keeping up his live stock to a number equal to that for which he was originally assessed, and, if he is not permitted to do this by the statute, such is a discrimination, and an unjust one, against him. But there is a wide distinction between the business of a merchant and that of a stock grower. The former is constantly parting with his goods in the course of trade, and replacing them with articles of like character for future sale; while the latter relies largely upon the natural increase of his flocks and herds for his profits, and his property is in more tangible shape, and subject to fewer changes in its character, than that of the merchant. There is no allegation or statement in the facts submitted that the cattle of the plaintiff in error, the tax upon which is in controversy, were brought into the territory for the purpose of replenishing the herd, or to keep it up to the number assessed. It was easy to have alleged this, but there is no such statement or proof. This action is in the nature of a suit in equity, and the extraordinary remedy of injunction is invoked against the tax collector. In such proceedings the party asking the injunction must clearly show that he is entitled to the relief sought. In the case of Board v. Wilson, supra, it was said that the moneys and credits of the appellee were properly subject to taxation in Colorado on the 1st day of May, and that he was required to return them to the assessor, and presumably did so. Four months after, the ap-pellee changed the character of his personalty by investing the money in cattle in an adjacent state, which were driven to Colorado, and again taxed, amounting to double taxation of the same business capital for the same year. The court ohserve: “It is needless to say that such results cannot be tolerated, and that the legislature neither intended nor contemplated them. ” We do not know the character or quantum of proof on this point in this Colorado case, but certainly, in the absence of any in the case at bar, the doctrine cannot be applied. We do not know that the capital representéd in this herd of catfle, the tax on which is in dispute, was ever taxed, either in Wyoming or elsewhere, and wecannot say that it “ presumably” was. Thecattlemay have been bought on credit in an adjacent state or territory, or the corporation owning them have had them in such state or territory at the time of the taxation period here, and they may not even have been subject to assessment or taxation for the year 1889 in such other jurisdiction. The allegation in the agreed statement of facts is that the corporation, plaintiff in error, “paid all other taxes assessed and levied *773 against it on all other property that year in said county situated.’’ This indicates that no tax was laid on any business oí the corporation employed in the purchase oí this herd of cattle for that year. But it is not contended for the plaintiff in error that there was any such double taxation on its property, and it cannot be inferred from the facts submitted. We have mentioned this matter, as it is treated of in the Colorado case, in order that it might be understood that itwas notover-looked by us.
The history of all this and kindred legislation in this jurisdiction on this subject is that the legislature from time to time has sought to impose the burdens of government upon such classes of personal property so difficult to reach by ordinary laws prescribing a regular period for assessment. It may be driven o'r brought in directly after the completion of the assessment of property for the current year, and taken or driven out before the beginning of the next annual assessment, and thus escape taxation. In the case of live stock owned by foreign corporations, the public lands have been grazed upon in many instances, the protection of the laws invoked against depredations and thefts, and yet no return has been made to the public therefor. Anactcould notbeframed that would discriminate against theprop-erty of nonresidents, and this statute was probably enacted to remove all possible objections to its constitutionality. While courts have uniformly looked with much disfavor upon any attempt to assess property for taxation after the regular assessment period has expired, the decisions have been based upon statutes which fix the time for assessment, and where there is no provision for an additional assessment, as provided for in section 3845 of our Revision. This section, and those following it, are amendments to the laws providing for one annual assessment for a definite assessment period, and were doubtless enacted to supply what was deemed to be a defect in the law, and to reach a class of property migratory in its character. Section 3843 is much like the Colorado statute, which was construed out of existence by the supreme court of Colorado in the case cited, (Board v. Wilson.) Section 3845, enacted later, removes the objections of that court, as well as those of the supreme court of Kansas in the case of Graham v. Commissioners, supra. We ought not to set aside a statute framed with such evident care, and with the purpose in view to remedy existing defects. All doubts must be resolved in favor of the statute, and it is not our function to set aside a statute, unless there be no doubt of its unconstitutionality. We do not think that section 3845 is in conflict with the law of congress. It does not unjustly discriminate in favor of a merchaút or dealer and against other classes of property owners. The exception is one that prevents double taxation, and keeps alive a wise provision of antecedent legislation. This statute provides for an equalization of property so assessed after the annual equalization, and it appears that all the rights of the taxpayer are carefully guarded in this statute of 1884 as found in sections 3844 to 3849 of the Revision, inclusive. There is probably no provision for the assessment of personal property brought or driven into Wyoming after the expiration of the assessment period, and after the expiration of the calendar year, prior to the beginning of the assessment for the next ensuing calendar year, — that is, during the months of January, February, and March of such ensuing year; but this, in our judgment, does not invalidate the act, as the year for which taxes are considered as laid is evidently the calendar year, and this would probably exclude portions of the following year ensuing before the beginning of the assessment for such year. We certainly cannot say that the legislature had no right, power, or authority to enact the statute, or that an additional assessment for that portion of the calendar year ensuing after the assessment period is unjust or invalid, because it is an innovation in legislation.
It appears that this property was assessed during the second meeting of the board of equalization. The property was driven into the county of Fremont after the expiration of the regular annual assessment period, as it was so driven into that county about the 1st day of July. The assessor must return his assessment to the county clerk on or before the fourth Monday of June. On this day the board of equalization begins its labors, and they are to continue in session for not less than 3 and not exceeding 15 days. Such board may complete the assessment, and may “add to said assessment roll any taxable property in their county, not included in the assessment as returned by the assessor, and shall assess the value-there *775 of;” but this'can be done only at this first meeting of the board. Sections 3796, 3797, 3801, Rev. St. Wyo. It maybe that the board of equalization for Fremont county was in session during its first meeting at the time the cattle were driven in, as the 15-day limit of its session may have fextended beyond the 1st of July, but there is absolutely nothing in the record showing how long this session lasted. The board had no power to add this property to the assessment roll at the second meeting, which commenced on the fourth Monday of July, as the object of that meeting is to hear complaints and equalize assessments after due notice to parties whose assessments have been raised. It was, however, assessed by the assessor, who is the “proper” assessing officer. The assessor evidently assessed the property under section 3843, believing it was in force, and the full rate of taxation for the current year was imposed upon the property. It was assessed between the 22d and 28th days of July, 1889, and at that time it had been in the territory for more •than 30 days and less than 6 months. Hence, under the terms of section 3845, it could be taxed only at one half of the tax levied against other like property for the current year. It was taxed at the full annual rate, in the sum of $515.70, and this was error. One half of this sum is $257.85, and this was the sum due for the taxes on the property computed for six months. The excess can be easily separated from the legal tax, and in dividing it between the different specific taxes for territorial, state, county, school, and school-district purposes, there will be no difficulty. As the legal taxes are not so blended with the illegal portions as to be inseparable, the excess may be deducted. By the stipulation of parties herein, the judgment of the district court for Fremont county will be modified accordingly, and the cause is remanded to that court, with directions to set aside its judgment against the plaintiff in error in the sum of $515.70, and to enter in lieu thereof a judgment against the Frontier Land & Cattle Company, the plaintiff below, in favor of the defendant below, in the sum of $257.85 and the costs of the entry of such judgment. The plaintiff in error will be allowed the costs of this court.
Conaway and Merrell, JJ., concur.